BROADWELL
*vs*
SWIGERT *et al.*

</div>

---

## Broadwell *vs* Swigert *et al.*

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Steamboat Collisions. Damages. Common Law. Chancery attachment.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

THE owners of the steamboat Bob Letcher filed their bill in the Louisville Chancery Court, to attach the steamboat Hard Times, to answer damages sustained by the former boat, on a charge that she had been run into and sunk on the Ohio river on her downward trip from Frankfort to Louisville, by the Hard Times, in her ascending course on the river.   A jury was summoned and sworn

<div style="text-align:right">

CHANCERY.

*Case* 12.

*September* 21.

Case stated.

</div>

to inquire into and determine upon the facts submitted to them, and the Chancellor gave the following instructions to them:

"1st. If they believe that the steamer Bob Letcher was owned by the complainants, and the steamer Hard Times was run into her, and the Letcher sunk thereby, through the wilful misconduct, bad management, want of proper skill, or carelesness of the officers of the Hard Times, without any similar misconduct, immediately conducing to the collission, on the part of the officers of the Letcher, the jury ought to find for the complainants the amount of damages they have sustained from the sinking of their boat.

"2d. They have a right to believe from the evidence, that the collision between the two boats did not proceed from mere accident, but that one or both were in fault, and if they believe from the evidence, that the proximate cause of the collision, was brought about by the mutual fault of the officers of both boats, and that by such united fault, the boats were so placed that collision could not have been avoided by the exercise of ordinary vigilance and skill, on the part of either, then they should *apportion* the loss between the owners of the two boats, by finding for the plaintiffs one half of the damages they have sustained by the sinking of the Letcher."

The jury found a verdict for one half of the value of boat Bob Letcher, and a new trial being asked by the owner of the Hard Times, and overruled by the Chancellor, and decree rendered, he has brought the case to this Court for revision.

The instructions by the Court to the jury, involve the only legal questions to be decided by this Court. So much of the first clause of the second instruction, as informs the jury that they have a right to believe that the collision between the two boats did not proceed from mere accident, but that one or both were in fault, was justified by the proof now in the record, and the Chancellor did not err in refusing to give the instruction to the jury asked by the defendant's counsel, that they should find for the defendant if they believed that the collision was accidental, as the proof did not authorize the conclusion

that it occurred "by *vis major*, or physical causes exclusively, and without any negligence or fault," on the part of either of the boats. But we are satisfied that the Chancellor did err in instructing the jury that they should *apportion* the damages equally between the owners of the two boats, in case they should believe that both were in fault.

We are aware that this is the rule in the Admiralty Courts of England, which are governed by the civil law, in cases of a conflict between ships, sailing on the ocean. It is also the rule by the ordinances of many of the kingdoms of continental Europe. And in others, in such cases, the damages are apportioned according to the degree of fault.

But neither of these rules are adopted by the common law Courts of England; but on the contrary, if the conflict and injury was purely accidental and unavoidable, or if the officers of both vessels were in fault, neither can recover. And the common law rule is the rule by which this Court and the Courts of Kentucky are to be governed. In the case of *Handaysyde et al.* vs *Wilson*, Best, C. J. of Kings Bench, says, "the material question in this case, is not which of the vessels first struck the other, but whose negligence it was by which the injury was caused. If it was the result of accident, owing to the darkness of the night, the plaintiffs must look to their underwriters, and cannot recover in this action. So also if both *parties* were in the *wrong* the *plaintiffs must fail* in this action:" (14 *English Common Law Reports*, 431.) In the case of *Luseford* vs *Large*, for an injury charged to be done, in upsetting the plaintiff's wherry or small boat on the river Thames, by the steamer Albion, (24 *Eng. Com. Law Rep.* 394.) Duncan C. J. said, "you must be satisfied that the Albion was going at too great speed and thereby occasioned the swell, and you will have to say whether it was that swell *alone*, which occasioned the injury, or whether *it is doubtful* that such was the case, for that will be enough to prevent the plaintiff's recovering. If you are satisfied that the defendant's vessel occasioned the injury, by its improper speed, and that the *plaintiff was not in fault and did* not contribute to

Rule of liability for assessing damages for injuries done to vessels at sea, is not the rule of liability for injuries to steamboats on the Ohio; the first is governed by admiralty law, the latter by the common law.
—By the common law, if the officers of two vessels coming in collision were both in fault, neither can recover, so if the collision was purely accidental and unavoidable.

his misfortune, by his improper management of his boat, then you will find for the plaintiff, and give him such damages as you consider him entitled to."

In the case of *Pluckwell* vs *Wilson*, (*Same book*, 268,) which was the case of a conflict between a chaise and a carriage, and injury to the former, Justice Anderson "left it to the jury to say whether the injury to the plaintiff's chaise was occasioned by negligence on the part of the defendant's servant, without *any* negligence on the part of the plaintiff himself; for if the plaintiff's negligence in any way concurred in producing the injury, the defendant would be entitled to the verdict."

And in the case of *Wolf* vs *Beard*, (34 *Eng. Com. Law Rep.* 435,) which was an action for the negligent driving of a Cabriolett by the defendant's servant, by which the plaintiff was run over in the street, and injured, Coleridge J., (in suming up,) said, "If the plaintiff has contributed to the accident by her own neglect, she cannot recover." The same rule is adopted in the Courts of Westminster, as appears by these authorities, in the case of a conflict between sea vessels and land carriages. The American Courts, which are governed by the common law, adopt the same rule as to the plaintiff's right to recover.

In the case of *Lucy Law* vs *Crombie*, (12 *Pickering's Rep.* 177,) which was an action on the case to recover damages for alledged negligence in the defendant's servant, in driving a four horse sleigh, by which the plaintiff was run over, the Court say, "we consider the rule now well settled, that to enable the plaintiff to recover, he must not only show some negligence and misconduct on the part of the defendant, but ordinary care and diligence on his own part, and cites *Buterfield* vs *Forister*, (11 *East*, 61;) *Harlow* vs *Hemeston*, (6 *Cowan*, 191;) and *Smith* vs *Smith*, (2 *Pick.* 621.)

And the same rule is adopted and settled as the common law rule in Pennsylvania, in 6 *Wheaton's Rep.* 321.

And Chancellor Kent, in the 5th edition of his Commentaries, published in 1844, 231, changes his former text, and after laying down the rule adopted by the marine law, and foreign ordinances and jurists, as to the appor-

tionment of the damages, where there is fault on both sides, he remarks: "But according to the English and American rule, in the Courts of common law, if there be fault or want of care on both sides, or without fault on either side, neither party can sue the other;" and he cites the following authorities: *Vanderplank* vs *Miller*, (1 *Moody and Malkin*, 169;) *Venuall* vs *Gerner*, (1 *Cromp. and Meeson*, 21;) *Simpson* vs *Hand*, (6 *Wharton*, 311;) *Story Justice in the case of the Paragon; Philips on Ins.* vol. 2, 183; *Abott on Shipping, by Story*, edit. 1829, *page* 354.

BROADWELL
*vs*
SWIGERT *et al.*

If it be conceded, as insisted on by the counsel for the appellees, that the rule adopted by the civil law and marine codes of Europe, is more equitable and just, and better calculated to prevent the sacrifice of human life and property, by the conflict between steamers, so frequently occurring on our western waters, than the rule adopted by the common law, it is not the province of this Court to adopt the former, or change the latter, but the province of another department of the government.

It is not in the power of the judiciary of Kentucky to adopt the civil law or the marine code of Europe, in ascertaining the liability of steamboat owners for injuries done by collisions on the western waters.

Nor do we think that the fact that the trial of the question was brought under the cognizance of the Louisville Chancery Court, can authorize that tribunal to adopt any other than the common law rule in the trial of the case. Cognizance was given to that tribunal, by the statute, for the object and purpose only, of facilitating the remedy, by attaching and securing the boat, so that it might be subjected to the payment of the damages, that the plaintiffs might have a *right* to recover. But the statute did not attempt to alter or change the rules of law by which their right was to be ascertained and determined, nor to prescribe to the Chancellor any other rule of adjudication, upon the question of the plaintiff's *right*, than those given to the common law Judge.

—And though to the chancellor is given jurisdiction of such cases, and power to attach the boat, the common law principles must govern his adjudication.

The decree of the Chancellor is, therefore, reversed, and cause remanded, that the verdict of the jury may be set aside and a new trial granted.

*Pirtle and Duncan* for appellants; *Loughborough* for appellees.