MARTIN, WISE & FITZHUGH V. TEXAS & PACIFIC RAILWAY COMPANY.

No. 137.

## 1. Charge—Negligence, Contributory.

Action for value of cotton burned from alleged negligence of the railway company. The cotton was exposed uncovered upon a platform 74 feet distant from the track, and was in care of a compress company when burned. The court's charge upon negligence approved; it is as follows: "It is the duty of a railway company, in the equipment and operation of its engines, to use ordinary and proper care and diligence to prevent fire from being communicated from such engine to the property of other persons. By ordinary and proper care and diligence is meant such care and diligence as a person of ordinary prudence and caution would commonly exercise under the circumstances. and the degree of care and diligence required in each case is proportioned to the amount of danger probably consequent to a failure to exercise care and diligence. A failure to exercise ordinary care and diligence as the same is above defined and explained, is negligence."............. 119

## 2. Consent and Acquiescence.

Where cotton stored upon a compress platform was burned, and the railway company whose track was near had no control over either the platform or the cotton, the duty of the railway company to prevent escape of fire was not affected by any question of consent or acquiescence in the storing of the cotton upon the platform .............. 120

## 3. Charge—Care.

The court further charged the jury: "If you should believe from the evidence that at the time of the fire the engine was properly constructed, and provided with the best approved appliances for preventing the escape of fire; that the same were, in regard to preventing the escape of fire, all in good condition and repair; and that the engine was handled and operated with ordinary and proper care and caution as regards the escape of fire therefrom, then you will return a verdict for the defendant, even though you should believe that sparks from the engine burned the cotton."

*Held:* 1. This, with the former charge. was proper, and gave the proper measure of care necessary under the circumstances ........... 120

2. The care which a person of ordinary prudence and caution would commonly exercise under like circumstances was sufficient........... 120

3. It was not necessary that the charge call attention to the care of a person skilled in the particular business. Taken with the other parts of the charge, no intelligent jury could have understood that the test of proper care was not to be found in the surroundings of the particular transaction; nor could they have understood that the exercise of a less degree of care or skill than that necessary to properly operate the machinery intended to be used to prevent the escape of fire would not be negligence as defined in the charge........................... 121

**4. Contributory Negligence.**

"Contributory negligence, in its legal signification, is such an act or omission on the part of plaintiff, amounting to a want of ordinary and proper care and prudence, as concurring or co-operating with some negligent act of the defendant, as a proximate cause or occasion of the injury complained of." This definition not erroneous .............. 121

**5. Same—Charge.**

See charge approved submitting to the jury the acts of the compress company in whose exclusive possession was the cotton when burned, as affecting the rights of the plaintiff to recover, and as affecting the degree of care required of the railway company to avoid liability for injuries from sparks from passing engines............................ 122

**6. Questions Certified.**

The certificate from Court of Civil Appeals submitting whether charges were properly refused not showing that the facts raised the issue affected by the charges, this court can not determine upon the propriety of refusing or giving such instructions............................. 123

**7. Care by Railway Company.**

It was the duty of the railway company carefully to operate engines properly constructed to prevent the escape of fire, and if it failed in this respect it was negligent; but it was not charged with the duty of covering or otherwise securing the safety of the cotton, of which the compress company or the plaintiff had the exclusive control......... 124

Questions Certified from Court of Civil Appeals for Fifth District, in an appeal from Lamar County.

*H. D. McDonald* and *Maxey, Lightfoot & Denton*, for appellants.

*R. S. Lovett, Hale & Hale*, and *Head & Dillard*, for appellee.

STAYTON, Chief Justice.—This action was brought by Martin, Wise & Fitzhugh, against the Texas & Pacific Railway Company, to recover the value of cotton alleged to have been burned by fire originating from sparks escaping from defendant's locomotives, while the cotton was on the platform of a compress company some distance from the railway, for the purpose of being compressed preparatory to shipment.

The defense was contributory negligence and general denial; the alleged

negligence consisting in the fact that the cotton, without covering, was placed too near the railway track.

There was evidence making proper charges upon negligence and upon contributory negligence, and the court gave the following, among other charges: "It is the duty of a railway company in the equipment and operation of its engines to use ordinary and proper care and diligence to prevent fire from being communicated from such engines to the property of other persons. By ordinary and proper care and diligence is meant such care and diligence as a person of ordinary prudence and caution would commonly exercise under like circumstances; and the degree of care and diligence required in each case is proportioned to the amount of danger probably consequent to a failure to exercise care and diligence. A failure to exercise ordinary care and diligence, as the same is above defined and explained to you, is negligence."

Under this two questions are certified—

"1. Is such a charge a proper presentation of the proper degree of care required by a railway company in passing cotton yards or other places where combustible material is situated near its track?"

The charge was a clear exposition of the law of negligence as applied to a railway company whose trains pass near places where cotton or other combustible material may be placed, and as applied to persons so placing such material near a railway track. It ought to have been satisfactory to the most fastidious.

"2. Is it necessary to charge that a greater amount of care is required of a railway company in passing combustible material placed near its track, with the consent and acquiescense of the railway company, than is required of it at other points where there is no such combustible material situated."

The charge made the requisite degree of care to depend upon the circumstances attending the transaction, including the increased probability of danger resulting from these; and if the court had undertaken to call the attention of the jury to the particular fact that cotton was a combustible material and that on this account it was necessary that the railway company should have used a high degree of care, it is most likely that the court would have infringed the rule which forbids a charge upon the weight of evidence. Such a course would also have involved necessity for a charge as to the degree of care the owner of such combustible material ought to use when he places it near a railway track, where there is always danger of fire under most prudent management.

In so far as the "consent and acquiescense" of the railway company to the cotton being where it was is to be considered, it will be proper in this connection, and as a like question is elsewhere presented, to state the facts on which such "consent and acquiscense" rest.

The cotton had been shipped over defendant's railway from some other

locality to the compress, in order that it might be compressed preparatory to final shipment, and had been delivered to the compress company, by which it was placed on its own platform until it could be compressed.

The connection of the railway company with the cotton ceased when it was delivered to the compress company, and it had no further control over it whatever.  The platform, owned and controlled by the compress company, on which the cotton was when burned was located where it was by agreement between the two companies for their mutual convenience, and connected with it was the platform of the railway company used in connection with its business.  The platform on which the cotton was when burned was the place where the compress company usually stored cotton until it could be compressed, and it was seventy-four feet from the railway track.

As the railway company had no control over the cotton, we do not see that the agreement between the companies that the platform should be located where it was had any bearing whatever on the question of care or degree of care necessary to be observed by both parties.  The obligation of the railway company to use proper care, in view of the surroundings, was neither more nor less than it would have been had the platform of the compress company been placed where it was without agreement with the railway company, or even contrary to its wish.  There was no question of "consent or acquiesence" in the case which could have any bearing on the matters so clearly presented by the charge.

The court instructed the jury:  "If you should believe from the evidence that at the time of the fire the engine was properly constructed and provided with the best approved appliances for preventing the escape of fire; that the same were, in regard to permitting the escape of fire, all in good condition and repair; and that the engine was handled and operated with ordinary and proper care and caution as regards the escape of fire therefrom, then you will return a verdict for the defendant, even though you should believe that sparks from the engine burned the cotton."

Under this the following questions have been certified:  "Was this charge proper, in connection with the other charge defining ordinary care as the proper measure of precaution under such circumstances."

This charge, in connection with the charge already considered, was proper, and gave the proper, measure of precaution or care necessary under such circumstances.

"Is the care which a person of ordinary prudence and caution would commonly exercise under like circumstances sufficient under the law?"
So we understand the law to be written and universally administered when its rules are observed.

"Would or would it not require such care as a person of ordinary prudence and caution, skilled in the particular business, would exercise under like circumstances?"

If there was a question in the case whether the fire occurred because of unskillfulness of the engineer, then inquiry as to his capacity properly to discharge the duties of the place would have become proper, even on the question of negligence of the railway company; for however complete might be the equipment of engines to prevent the escape of fire, if a railway company employed and placed in charge of an engine an engineer who did not know how properly to use such machinery, this of itself might render the company liable for injury resulting from the act of such a person, if that occurred because of his ignorance of the proper method of using such machinery.

The statement, however, does not indicate that any such question was involved in this cause, and had the charge of the court authorized or required the jury to enter into such an inquiry, it would have been calculated to mislead rather than to give the jury a clear conception of the rules of law by which they were to be governed.

Morever, the engine could not ordinarily have been "handled and operated with *ordinary and proper care and caution* as regards the escape of fire" by a person wanting in proper skill; but if this was done even by an unskilled person, the degree of care required of the railway in the particular instance to avoid injury to others would have been exercised.

This charge must be considered in connection with the others; and when so considered no intelligent jury could have understood that the test of proper care was not to be found in the surroundings of the particular transaction; nor could they have understood that the exercise of a less degree of care or skill than that necessary to properly operate the machinery intended to be used to prevent escape of fire would not be negligence as defined in the charge.

The court charged the jury, that "Contributory negligence, in its legal signification, is such an act or omission on the part of plaintiffs, amounting to a want of ordinary and proper care and prudence, as concurring or co-operating with some negligent act of the defendant, is a proximate cause or occasion of the injury complained of."

We are asked if "this is a proper definition of contributory negligence? Was the expression in such charge, 'as concurring or co-operating with some negligent act of the defendant, is a proximate cause or occasion of the injury complained of,' calculated to mislead the jury?"

In so far as the charge declared what would constitute contributory negligence on the part of the plaintiffs it was strictly correct, and it contained nothing calculated to mislead the jury.

The court charged the jury: "If you believe from the evidence that the plaintiffs or their agents or employes placed plaintiffs' cotton where it was burned; and if plaintiffs or those persons who had charge of the cotton for them at the compress did not cover or otherwise protect such cotton from sparks emitted from passing engines; and if you find that

the placing of such cotton at the place where it was burned, and so leaving it there uncovered, was such an act of omission as a person of ordinary prudence would not have done in view of the probable damages of fire from passing engines, if such damage was probable; and if you further find from the evidence that such placing of the cotton there and leaving it uncovered was a proximate cause, which, concurring with the negligence of the defendant, if you find that the defendant was negligent, produced the fire which damaged the cotton, then the plaintiffs can not recover, no difference how negligent in the matter you may find the defendant to have been.''

We are asked, '' Is this charge a proper presentation of the law of the case ? Was such charge on the weight of the evidence ? Was it proper in such charge upon contributory negligence in such a case, to direct the jury, under the state of facts given, ' then the plaintiffs can not recover, no difference how negligent in the matter you may find the defendant to have been ?' Is it proper in this class of cases, where a recovery is sought on the ground of negligence, and contributory negligence is alleged as a defense, to apply the rule, that contributory negligence by the plaintiff will be an absolute defense, no matter how negligent in the matter the defendant may have been ? If the railway company knew of the situation of the cotton, and by the exercise of ordinary care could have avoided setting fire to it and destroying it, would the fact that it was negligence on the part of the compress company to place the cotton in that position, uncovered, permit a recovery against the railway company?''

The first of these questions embraces all the others, and they will be considered, but not in order stated.

The jury had been clearly instructed as to the degree of care necessary to be used by the respective parties, and as to the effect of contributory negligence on the right of plaintiffs to recover; and in view of the relation of the compress company to the cotton and to the plaintiffs, the negligence of that company is to be imputed to plaintiffs. Duggins v. Watson, 15 Ark., 126; Simpson v. Hand, 6 Whart., 321; Broadwell v. Swigert, 7 B. Mon., 39; Ins. Co. v. Austin, 69 N. Y., 482; Railway v. Goddard, 25 Ind., 197; Puterbaugh v. Reasor, 9 Ohio St., 487.

To hold that the knowledge of the railway company of the situation of the cotton would fix liability on it, if its employes failed to use ordinary care for its protection, although the compress company, the representative of plaintiffs, knew the same fact, and also failed to use ordinary care in view of the surroundiugs, would be, in effect, to hold that the railway company was under obligation to use greater care for protection of the cotton against fire than were its owners.

Such is not the law. The compress company probably thought the cotton safe at such a distance from the railway, even though uncovered; and if the railway company knew that such was its condition, might it

not rely upon the judgment of those to whose care plaintiffs had entrusted it? If the railway company should have apprehended danger, and therefore have used greater care, what was the duty of the plaintiffs under the circumstances?

There is, however, a class of cases in which, although one person has been negligent, it becomes the duty of another to avoid inflicting injury upon him after discovering his danger, if this can be done by the exercise of such care as is then practicable, and failure in such cases will fix liability. This class of cases embraces those in which exposure to danger is known and imminent.

Such cases have been often considered by this court. Railway v. Symkins, 54 Texas, 615; Railway v. Richards, 59 Texas, 377; Railway v. Evans, 71 Texas, 369; Railway v. Weisen, 65 Texas, 447; Artusy v. Railway, 73 Texas, 195; McDonald v. Railway, 22 S. W. Rep., 944.

The facts on which the questions certified are predicated do not, however, bring this case within that class of cases, and the ordinary rule in reference to the effect of contributory negligence must be applied.

Had the facts brought the case within the class before referred to, then so much of the charge as instucted the jury that plaintiffs could not recover if their negligence was a proximate cause of the injury, "no difference how negligent in the matter you may find the defendant to have been," would have been misleading; but under the facts, the rule of law by which the jury should have been governed was in this respect correctly stated. It is not perceived that the charge was upon the weight of evidence, or that it was subject to any of the objections suggested in the question certified.

Another charge was: "If you find from the evidence that plaintiffs' cotton was set fire to and destroyed by some other means than by sparks emitted from defendant's engine; or if you fail to find from the evidence that said cotton was set fire to and burned by means of sparks emitted from the defendant's engine; or if you find that it was set fire to and burned by means of sparks emitted from defendant's engine, but fail to find that the same was the result of negligence on the part of defendant in some respects, as herein before explained, you will return a verdict for defendant."

We are asked if this was a charge upon the weight of evidence, or calculated to mislead the jury.

It assumed no fact, intimated no opinion upon the weight of any fact, and must in absence of statement to the contrary be presumed to have stated issues raised by the evidence, and correctly stated what the result should be on findings upon those issues, and we do not think it subject to either of the objections suggested in the question certified. Other parts of the charge stated clearly what facts would render defendant liable.

Plaintiffs asked the following charges, which were refused:

"If you believe from the evidence that the defendant by its acts, conduct, or course of business induced the plaintiffs to place their cotton where it was burned, under the belief, induced thereby, that it would be safe from fire from passing engines, then the defendant would be estopped from setting up contributory negligence against the plaintiffs."

"2. If you believe from the evidence that the defendant agreed with the Paris Compress Company that its compress platform should be located where it was located when the cotton was burned, or that defendant owned a part of the platform on which the cotton was burned, and that said cotton had been placed there with the consent and acquiescence of the defendant, or that said place was the usual and customary place at which defendant was in the habit of receiving such cotton after compressing for shipment, then you may consider such facts, in connection with all the other facts and circumstances in evidence, in determining the question of contributory negligence and estoppel."

Questions certified on them are as follows: "There was no charge given by the court on this phase of the cause. Should either of the special charges have been given? Would the placing of the cotton upon the joint platform by the consent, acquiescense, or invitation of the defendant, it being the usual and customary place for the same while waiting to be compressed, affect the question of contributory negligence? Should or should not the court have given a charge upon this point; and to what effect?"

If the facts on which these charges were predicated are given in the statement made by the Court of Civil Appeals, then neither of the charges should have been given, simply because there was no evidence raising such issues as the charges suggested.

To have given them would simply have tended to mislead the jury, and to induce them to believe that the railway company, by reason of the location of the compress platform and the connection of its own platform with that, gave the railway company some control over the cotton after it had been delivered into the exclusive possession of the compress company.

If the railway had owned a part of the platform on which the cotton was when burned, that could have had no effect whatever on the rights of the parties, unless the railway company had some right to control the cotton, and therefore was under obligation to protect it from fire, as was the compress company.

It was the duty of the railway company to operate engines properly constructed to prevent the escape of fire, and if it failed in this respect, it was negligent; but it was not charged with the duty of covering or otherwise securing the safety of the cotton, of which the compress company or plaintiffs had the exclusive control.

Whether the cotton should be placed where it was did not depend on the consent, acquiescence, or invitation of the railway company; and if it had extended these, this would not have relieved plaintiffs of duty to use proper care to protect it from fire; nor would the fact that defendant usually received cotton for shipment at that place after it was compressed cast upon it, before cotton was so received, that burden of care which rested on plaintiffs.

Delivered June 4, 1894.

*Dillard & Muse* urged motion for rehearing, which was refused.