## ST. LOUIS, S. F. & T. RY. CO. v. KAYLOR.
### (No. 9571.)

(Court of Civil Appeals of Texas. Dallas. April 3, 1926. Rehearing Denied May 22, 1926.)

1. Negligence ☞65—"Contributory negligence" is want of ordinary care, which, concurring with negligence of defendant, is proximate cause of injury.

"Contributory negligence" is an act or omission by plaintiff amounting to want of ordinary care, which, concurring or co-operating with negligent acts of defendant, is the proximate cause or occasion of injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

2. Trial ☞350(7)—Where method of doing work required servant to assume position he did, submitting negligence as to method of doing work without submitting negligence as to position assumed held not error.

In employé's action for injuries, where method of accomplishing work adopted by employé required him to assume position he did, submitting his contributory negligence as to the method adopted, in language of requested instruction, without submitting his contributory negligence as to position assumed, as requested in other instructions, held not erroneous, where there was but one act of negligence.

3. Trial ☞362.

Where juror signified he did not understand one question answered by jury, court properly retired jury to further discuss matter.

4. Trial ☞362—Court was required to call jury's attention to fact that findings were contradictory, and to send them back to jury room under instruction to again read court's charge, and to again return their verdict, if charge was not understood.

In employé's action for injuries, in which jury found that plaintiff was free from contributory negligence, and that his injuries were caused by negligence of fellow servant, and then found that plaintiff's injuries were result of an accident, court was required to call jury's attention to fact that findings were contradictory, and to send them back to jury room under instruction to read court's charge and special issues, but, if of opinion they had not misapprehended them, to again return the verdict.

5. Trial ☞362 — Though counsel should not in presence of jury request court to inform jury that one finding contradicted others, where there was no request to instruct jury not to consider statement, and court admonished counsel and refused request, held statement was not reversible error.

While counsel should not, in presence of jury, request court to inform jury that one of their findings was contradictory of the others, where there was no request to instruct jury not to consider such statement, and court admonished counsel not to discuss matter in pres-

ence of jury, and refused counsel's request, *held* statement was not reversible error.

**6. Witnesses ⊕⊐287(1)—Where witness testified hammer hit block about inch from edge, and on cross-examination, that he could not see where it hit, on redirect examination he may explain his answer.**

Where witness on direct examination testified that his hammer hit a block about an inch from the edge, and, on cross-examination, that he could not see where it hit, court properly permitted him, on redirect examination, to explain his answer.

**7. Trial ⊕⊐89.**

Answers which are conclusions of witness may be stricken out on motion.

**8. Witnesses ⊕⊐275(2)—In action for personal injuries, court may require plaintiff to answer specifically whether he is willing for court to appoint physicians to make physical examination of him.**

In action for personal injuries, court may require plaintiff to answer specifically whether he is willing for court to appoint three disinterested physicians to make physical examination of him and testify as to the result.

**9. Appeal and error ⊕⊐274(1)—Where injured plaintiff, when asked if he were willing to submit to physical examination, answered he would be guided by counsel, and counsel objected to answering, court's instruction to proceed with trial was equivalent to refusal to permit examination, and defendant, by excepting, secured all rights that would have come from a direct refusal.**

Where injured plaintiff, when asked if he were willing to submit to physical examination, answered he would be guided by counsel, and counsel objected to answering in presence of jury, court's instruction to proceed with trial was equivalent to refusal to permit examination, and defendant, by taking exceptions, secured all rights that would have come from a direct refusal.

**10. Damages ⊕⊐132(1)—Verdict for $12,325 held not excessive, where plaintiff's jaw was broken, and he was unable to follow his avocation of machinist for several years.**

Verdict for $12,325 *held* not excessive, where plaintiff's jaw was broken, accompanied with great pain, and he had been unable to follow his avocation as machinist for several years.

**11. Evidence ⊕⊐588.**

In action for personal injuries, jury might under the evidence, adopt either the theory of plaintiff or defendant as to the extent of plaintiff's injuries.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by Joe F. Kaylor against the St. Louis, San Francisco & Texas Railway Company. · Judgment for plaintiff, and defendant appeals. Affirmed.

Goree, Odell & Allen, of Fort Worth, and Freeman, McReynolds & Hay, of Sherman, for appellant.

Randell & Randell, of Sherman, for appellee.

JONES, C. J. Joe F. Kaylor, appellee in the above numbered and styled cause, was awarded a judgment in the district court of Grayson county for $12,325 against appellant, St. Louis, San Francisco & Texas Railway Company, as damages for personal injuries received while in the service of appellant. The said judgment was awarded on the findings of a jury on special issues, and is in response to said findings. Appellant has duly perfected its appeal to this court.

On February 4, 1922, and for some years previous thereto, appellee was employed by appellant as machinist, and worked in such capacity in appellant's shops in the city of Sherman. As such employé he was assisted in the work he did by another employé, known as a "machinist's helper," who worked under the direction of appellee while they were engaged on the same piece of work. On said date appellee was engaged in putting "binders" on an engine that was undergoing repairs in said shops, and had for his helper one Phares. While attempting to put one of these binders on, it was discovered that it would have to be taken down and filed before it could be placed in its proper place. The helper attempted to knock the binder down by striking it with a sledge hammer; the binder being of soft steel. After the helper had struck a blow or two with the sledge hammer, he was directed by appellee to desist from the attempt to knock it down in that manner.

The above-stated facts are undisputed. On the disputed facts the following findings are made, by reason of the findings of the jury and the significance that should be given to such findings: Appellee was directed by appellant's shop foreman not to injure the binders on the engine, and, when this particular binder did not readily come down from the blows with the sledge hammer, he secured a block of oak wood about 4 by 4 in end dimensions, and about 15 inches in length, and placed same over the binder, and secured same in its place by holding one end of said block with both hands, directing the helper to strike same at a · designated place, which would have permitted appellee to hold said block with safety. This method of accomplishing the work of knocking down the binder was adopted for security against any damage to the binder by coming in direct contact with the sledge hammer. In order to hold the block in its place, it was necessary for appellee to take the position assumed by him on the occasion in question, to wit, placing himself in a stooping position with his head

directly over his hands, and in close proximity thereto; there being a very narrow space because of other constructions in which appellee could do this work. About six blows had been struck by the helper on the place designated by appellee, when he struck a blow away from this place, with the result that the said block flew up, and, with great force and violence, struck appellee on the chin and right side of the face, breaking his jawbone, knocking out some teeth, and injuring his upper jaw to such an extent that necessitated the extraction of all his upper teeth. The injuries received by appellee on said occasion are permanent, and have disabled him from following his occupation as a machinist. The injuries received resulted directly from the negligence of the said helper in striking said block away from the said designated place, and were not contributed to in any way by any negligent act or omission of appellee.

The pleading of appellee alleged that his injuries directly resulted from the above-stated negligent act of the helper. Appellant pleaded the general issue, assumed risk, and the following plea of negligence on the part of appellee:

"Defendant further says that, if plaintiff was injured in any manner as claimed by him, such injuries were caused solely by the negligence of plaintiff in the manner and way in which he used the block or piece of wood, which he alleges struck him in causing the injuries claimed to have been sustained by him. Defendant shows to the court that the plaintiff himself was the machinist engaged in doing the work in question on said engine, that any employés working with plaintiff were helpers, and that plaintiff was in control of, and had charge of, said employés, directing the manner, method, and means of doing the work, and that, if he was injured as alleged, such injuries were proximately caused and contributed to by the manner and method and way in which plaintiff directed the work should be done, and not on account of any negligence on the part of any helping machinist or other employés working on the engine with plaintiff. Defendant denies that the helper of plaintiff carelessly struck said block, causing it to be knocked and to fly out of place, striking the plaintiff, but says that at the time, and on the occasion in question, plaintiff voluntarily placed himself in a position of danger, and, if said block was caused to fly up and strike the plaintiff, then that the striking of plaintiff by said block was occasioned, not by any negligence of plaintiff's helper or other employé working with plaintiff, but on account of plaintiff placing himself in close proximity to said block where he was in a position of danger. Plaintiff knew, or by the exercise of ordinary care on his part should have known, that, if said block should be caused to fly up and strike him, he would be in a place of danger, and any injuries that he may have sustained were caused solely by his acts of negligence in the manner, method, and way in which he directed the work to be done, and in exposing himself and placing his head and face too close to said block and in close proximity thereto when he directed same to be struck with the sledge hammer by the helper. All of which facts were known, or should have been known, to plaintiff at the time and on the occasion in question."

Appellant has carefully raised by assignments of error and appropriate propositions of law all of the issues herein discussed. The determining issues thus presented may be epitomized as follows:

(1) Error of the court in defining contributory negligence.

(2) Error of the court in submitting those special issues embracing appellee's cause of action, in that same were submitted in such manner as to cause them to be both leading and suggestive in favor of appellee.

(3) Error in submitting the defensive issues for appellee, in that same were too general and too restrictive in their terms.

(4) Error of the court in not receiving the first verdict of the jury when it was returned into court, in which verdict was a finding in response to special issue No. 5 that appellee's injuries were the result of an accident, and in sending the jury back because on a poll of the jury, at the instance of appellee, one juror stated that there was one question in the court's charge he did not understand, and later receiving the verdict changing the finding of the jury on the issue of accident to a finding that appellee's injuries were not the result of an accident.

(5) The refusal of the court to give appellant's requested instructions submitting different phases of the issue of contributory negligence.

(6) The overruling by the court of appellant's motion to set aside the finding of the jury on said special issue No. 5 submitting the issue of accident, because of the conduct of appellant's counsel in suggesting to the court, in the presence of the jury, that the finding of the jury on this issue in the verdict first returned was evidently a mistake, as it contradicted certain other findings, and that the court should so inform the jury.

(7) Because of errors in the admission of certain testimony offered by appellee and errors in refusing to admit certain testimony offered by appellant.

(8) Because of error of the court resulting from appellant's attempt to secure from appellee while he was on the witness stand, and from appellee's counsel, an answer to its question as to whether there was objection to the court's appointing three disinterested physicians to examine appellee and testify to the result of such examination.

(9) The excessiveness of the verdict.

These issues will be discussed in the order named.

[1] The court defined contributory negligence in the following language:

"'Contributory negligence,' as that term is used in this charge, is such an act or omission on the part of the plaintiff amounting to a

want of ordinary care, as, concurring or co-operating with the negligent acts of the defendant, is the proximate cause or occasion of the injury complained of."

This definition is assailed because it "is too restrictive, in that contributory negligence in law need not be the proximate cause, but a contributing cause to an alleged injury." And, further, because it "does not embrace a contributing cause, but is confined solely to the question of proximate cause." We do not think the definition given by the court is subject to criticism, but believe it clearly and succinctly defines contributory negligence.

In the case of I. & G. N. Ry. Co. v. Garcia, 75 Tex. 583, 13 S. W. 223, the Supreme Court, speaking through Chief Justice Stayton, defined contributory negligence as follows:

"By contributory negligence we understand to be meant such act or omission on the part of a plaintiff as an ordinarily prudent man would not do or suffer under similar circumstances, which, concurring with a negligent act or omission of a defendant, becomes the proximate cause of an injury."

It is not contributory negligence if a plaintiff's own negligence is the sole proximate cause of the injury, because, in such instance, the injury is the result of the sole act or omission of the plaintiff. The negligent act or omission of a plaintiff can only be termed contributory negligence when such act or omission, by co-operating or concuring with a negligent act or omission of a defendant, by thus acting together, cause an injury as the proximate result of such combined negligence.

In the instant case, the jury necessarily understood from the court's definition that, in considering their answer to the defensive issue of contributory negligence, it was the combined negligence of Phares and appellee that must have been the proximate cause of the injury, and not the sole negligence of appellee, in order to find appellee guilty of contributory negligence. The issue of appellee's negligence alone having been the proximate cause of the injury had been submitted in a preceding interrogatory. This definition of contributory negligence has been approved by a great many cases other than the one given above. I. & G. N. Ry. Co. v. Anchonda, 33 Tex. Civ. App. 24, 75 S. W. 557; Railway Co. v. Parks, 40 Tex. Civ. App. 480, 90 S. W. 343; Railway Co. v. Tullis, 41 Tex. Civ. App. 219, 91 S. W. 317; Railway Co. v. McClain, 80 Tex. 85, 15 S. W. 789; Martin v. Railway Co. 87 Tex. 117, 26 S. W. 1052. This assignment of error is overruled.

We do not believe the court committed error in the manner in which he submitted special issues embracing appellee's cause of action. These issues were not leading, and in no way suggested to the jury the manner in which they should be answered, and did not submit any purely evidentiary facts. The assignments of error in this respect are overruled.

[2] The assignments of error in reference to the manner of submitting appellant's defensive issues and those on the refusal of the requested instructions will be considered together.

Special issues Nos. 7 and 8 in the court's main charge are:

"Was plaintiff guilty of negligence in the manner and method employed by him in attempting to knock down the binder on the occasion in question, and was such negligence the proximate cause of plaintiff's being injured?"

Special issues Nos. 9 and 10 are:

"Was the plaintiff guilty of contributory negligence in the manner and method employed by him in attempting to knock down the binder on the occasion in question, and was such contributory negligence a proximate cause of plaintiff being injured?"

Appellant requested the following special issues:

"Was the plaintiff guilty of contributory negligence in the manner and method employed by him in attempting to knock down the binder on the occasion in question?

"Was plaintiff guilty of negligence in the position assumed by him in holding said block of wood on the occasion in question, and was such negligence the proximate cause of plaintiff being injured?

"Did plaintiff place his head in close proximity to said block of wood when he directed his helper to strike same with sledge hammer? If answered 'Yes,' then, Was the plaintiff guilty of negligence in so doing, and was such negligence the proximate cause of plaintiff being injured?

"Was plaintiff guilty of contributory negligence in the manner and method in which he held the block of wood on the occasion in question?

"Was plaintiff guilty of negligence in the position assumed by him in holding said block of wood on the occasion in question, and was such negligence the proximate cause of the injury sustained by him?

"Did plaintiff place his head in close proximity to said block of wood when he directed his helper to strike same with the sledge hammer on the occasion in question, and was plaintiff guilty of contributory negligence in so placing his head at said time?

"Was plaintiff guilty of negligence in the manner and method in which he held the block of wood on the occasion in question, and was such negligence the proximate cause of plaintiff being injured?"

It will thus be seen that the court submitted appellant's defensive plea of the negligence of appellee (1) on its theory that the negligence of appellee was the proximate cause of the injury, and (2) on its theory that appellee's negligence was a contributing cause of the injury. It also appears that each of these submissions is based only on the act of appellee in his selection of the manner and method of doing the work on the occasion in question; and, further, that appellant alleged negligence of appellee in the manner and method in which he undertook to perform the

work of knocking down the binder as an act of negligence. It also alleged, as a separate act of negligence, the position assumed by appellee while he was attempting to do the work under the method and manner selected by him. If these are two separate and distinct grounds of negligence, then the court erred in not submitting one of the above-requested issues in reference to the position assumed by appellee while the work was being performed. The undisputed evidence is to the effect that in performing the work under the method and manner adopted by appellee he necessarily had to assume the position with his head in close proximity to the block of wood, and, therefore, had to place himself in such a position that, unless the helper performed his work with care, injury to him might result therefrom. If then, the method of doing the work required appellee to be in the position he was at the time of his injury, his negligence, if any, in doing the work was not the act of assuming the position he was in at the time of his injury, for he could assume no other under this method, but was the act of selecting a method of doing the work which required him to assume such position. In other words, when the jury was passing upon whether appellee was guilty of negligence in the manner and method adopted by him to do the work on the occasion in question, they could only pass on such issue from the standpoint of the position such method required appellee to assume while the work was being performed. It necessarily follows, therefore, that appellee in its pleadings only alleged one ground of negligence, the dangerous method selected for doing the work, and that each of the above-requested instructions submitted the same act of negligence. The court having submitted this one act of alleged negligence in the very language of one of the requested instructions, appellant cannot complain of its submission rather than one of the others. We overrule all of the assignments of error in this respect.

[3, 4] Was there error committed by the court in retiring the jury to further consider the case after they had brought in a verdict under the circumstances attending such act? In this verdict, the jury, in response to special issues Nos. 1, 2, 3 and 4, made findings that the helper, Phares, struck the block of wood that was being held by appellee away from the proper place to strike it; that in so striking said block he caused it to be knocked and fly out of place, thereby striking plaintiff; that the helper Phares was guilty of negligence in striking said block as he did; and that such negligence was the proximate cause of appellee's injury. In response to special issue No. 5 the jury found that plaintiff's injury was the result of an accident, as that term had been defined by the court.

Before the verdict was read by the court, appellee's counsel was permitted to inspect same, and, after such inspection, stated, in the presence of the jury, that the jury were evidently mistaken in their answer to question No. 5, and that, in his opinion, they did not intend to answer question No. 5, "Yes"; that the court then admonished counsel for appellee not to discuss the matter in the presence of the jury; and that counsel approached the judge on the bench and stated, "There is a conflict in the finding; the jury have found that the plaintiff was not guilty of negligence, that his injuries were brought about on account of the negligence of his helper, and that this was the proximate cause of the injuries. These answers are in conflict with the answer to question No. 5. I think you should call the jury's attention to this, and have them retire and consider their answers further." This the court declined to do, and caused the special issues and the answers made by the jury to be read, and then asked the following question: "So say you all, gentlemen?" And the jury responded in the affirmative.

At the request of counsel for appellee, the jury was polled, and each responded that the verdict rendered was his verdict, until the ninth juror was reached, who responded, "There was one question I did not exactly understand," when the court immediately sent the jury back with the statement: "Gentlemen of the jury, you will retire to the jury room and consider your verdict," without polling the other three jurors. After a space of about ten minutes, the jury again returned their verdict, which was the same as formerly returned, except the answer to special issue No. 5 had been changed from "Yes" to "No." No request was made by appellant to instruct the jury not to consider the statement made by counsel in reference to their verdict.

When, in response to the poll of the jury, one of them signified that he did not understand one of the questions that had been answered, it was the duty of the court to retire the jury for a further discussion of the matter, because, clearly, the juror was not willing to say that the verdict was his verdict, and the court committed no error in not receiving the verdict and in sending the jury back for a further consideration of the case.

In the verdict first returned the jury had found that appellee had received injuries proximately caused by the negligence of an employé of appellant, and that appellee was free from any negligence that contributed to his injury. In direct contradiction to these findings, the jury also made a finding that appellee's injury was the result of an accident; that is, that it was the result of an occurrence to which human fault did not contribute. It is plainly manifest that the jury had labored under a misapprehension somewhere, for clearly they would not knowingly have made findings on one issue and then flatly

have contradicted them by the finding on the next succeeding issue. We think, under such circumstances, it was clearly the duty of the court to have called the jury's attention to the fact of this contradiction and send them back to the jury room under the instruction that they again read carefully the charge of the court and the special issues in order that they might determine whether they had answered any special issue under a misapprehension of the court's charge; but, if after such reconsideration of the court's charge the jury were of the opinion that they had not misapprehended the meaning of such charge, again to return the verdict into court. Denison Cotton Mill Co. v. McAmis (Tex. Civ. App.) 176 S. W. 621. The case cited was reversed by the Supreme Court, but on an entirely different issue. 215 S. W. 442.

A sound public policy demands of our trial courts such exercise of their judicial powers in the trial of a case as will legitimately hasten the conclusion of litigation. Of course, such powers must not be exercised in a manner that might tend to trench upon the independent function of a jury or deprive any litigant of a legal right. In the instant case, if the court, before the verdict was received and the jury discharged, had called the jury's attention to the fact that there was an irreconcilable conflict in the findings, certainly the jury would have been deprived of no function given by law and no legitimate right of either party invaded. The court, however, did not call the jury's attention to the fact that there was a contradiction, and only refused to receive the verdict when one of them signified that the verdict returned might not be his verdict. The affidavit of the foreman of the jury attached to appellee's reply to appellant's motion to set aside the finding of the jury as to accident disclosed a fact that was reasonably clear without such statement that the jury did misapprehend the court's definition of the term "accident."

[5] Counsel for appellee was clearly within his right when he made the request of the court, in effect, to inform the jury that the verdict returned contained contradictory findings. This should not have been done in the presence of the jury, but, in the absence of any requested instruction for the jury not to consider such statement, and in view of the admonition given counsel by the court, and the court's refusal to accede to appellee's demand, we do not think this impropriety of counsel constitutes reversible error, and the court did not err in overruling appellant's motion to set aside the finding of the jury on special issue No. 5.

[6, 7] Appellee testified on his direct examination that the hammer hit the block about an inch from the edge. On cross-examination he also testified that he did not, and could not, see where the hammer hit. In redirect examination he was asked to explain his answer that the hammer hit about an inch from the edge of the block, and he said that he had studied it out, and that this was his estimate of where the hammer hit. Objection was timely made to this explanation, and error is assigned because such objection was overruled. The effect of appellee's answer on cross-examination was to contradict his answer made on direct examination, and he should have been given the privilege of explaining his answers. This explanation showed that the first answer was a conclusion, and, of course, made it subject to be stricken out on motion because of this fact, but no such motion was made; appellant being contented with permitting the evidence to remain and taking its bill of exception on the admission of the explanation. This assignment of error is overruled.

Error is assigned on the admission of certain evidence given by appellee's witness O. J. Potter. The purpose of this evidence was to impeach appellant's witness Phares on material evidence given by said witness. The proper predicate was laid for the reception of Potter's evidence, and it was not error to overrule appellant's objection thereto.

[8, 9] Error is assigned complaining of the action of the court in not requiring appellee to answer specifically a question as to whether he was willing for the court to appoint three disinterested physicians to make an examination of him and testify as to the result of the examination. This was a proper inquiry, and the court so ruled. Austin & N. W. Ry. Co. v. Kluck, 97 Tex. 172, 77 S. W. 403. We do not believe, though, that the matter as presented to this court shows reversible error. When the court overruled appellee's objection to the question seeking this information from appellee, he informed appellee that he could consult his counsel before answering. This was done by appellee, and, when the question was repeated to him, he answered that he would be guided by what his counsel said. The record shows that appellant did not insist on a further answer from appellee, but immediately submitted the inquiry to appellee's counsel, who objected to answering the same, claiming that negotiations of that kind should be conducted in the absence of the jury. The court then observed: "I do not like this; the court has no power to order a man examined; that is a matter that must be left to the parties. I do protest against unseemly matters before the jury. Proceed with the examination of the witness." This observation of the court evidently referred to the discussion between counsel, and not to the right of appellant to pursue the matter in the further examination of appellee. Appellant's counsel then took their bill of exception, and let the matter rest. The effect of the proceedings was to decline the proposition submitted by appellant, and appellant secured all the rights that would have come from a direct refusal.

We have carefully examined other assign-

ments of error on the admission of evidence and on the refusal to admit evidence, and do not believe that any of such assignments show reversible error.

[10] Appellant urges the excessiveness of the verdict, which is for the sum of $12,325. The evidence offered by appellant as to the extent of the injury and appellee's physical condition at the time of the trial clearly suggest the excessiveness of the verdict. Appellant's medical testimony tends to show a temporary injury, and also tends to show that appellee would be able to follow his avocation of a machinist, and that his failure to follow such avocation was by reason of his participation in the strike in the summer of 1922. It also shows that during said summer previous to the strike appellee worked three months as a machinist in appellant's shops. On the other hand, the testimony of appellee tends to show that the injury is not only permanent in its nature, but that appellee is wholly unable to follow his avocation of a machinist; that, since said injury, he has suffered great physical pain, and was suffering such pain at the time of the trial; that his attempt to follow his avocation in the summer of 1922 was attended at all times with great pain, and that he was unable to, and did not, do at that time the heavy work required of a machinist. This testimony is sufficient to sustain the amount of the verdict.

[11] It was clearly the province of the jury to adopt either the theory of appellant or the theory of appellee as to the extent of the injury, and, the jury having adopted appellee's theory, and it being amply sustained by evidence, this court cannot disturb the findings on this issue. This assignment of error is overruled.

It is the opinion of this court that the various assignments of error above discussed do not disclose reversible error, and that this case should be affirmed.

Affirmed.