OMER H. DRURY *et al.*

*v.*

JAMES H. CONNELL *et al.*

*Opinion filed December 21, 1898.*

1. TRIAL,—*court is not required to give instructions not requested.* One cannot assign error on the failure of the court, in a will contest, to add, of its own motion, to instructions on the subject of undue influence, one relating to the burden of proof of such fact.

2. WILLS—*attestation of will must take place within the range of the testator's vision.* The act of attestation of a will, to be in the testator's "presence," within the meaning of the statute, must take place within the uninterrupted range of the testator's vision.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. FRANK D. RAMSEY, Judge, presiding.

BASSETT & BASSETT, for plaintiffs in error.

BROCK & GRAHAM, L. D. THOMASON, SCOTT & COOKE, and JAMES W. MCCREERY, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error, as heirs-at-law of William Drury, deceased, filed their bill in the circuit court of Mercer county to set aside the will of said William Drury, alleging that he was of unsound mind and memory; that the will was not subscribed by the attesting witnesses in his presence; that it was not read to him and he did not

know its contents, and that it was procured by the undue
influence of James H. Connell, who drafted it and was a
beneficiary under it, as well as the confidential attorney
of the testator. An issue whether the writing was the
will of the testator was made and submitted to a jury,
and upon the trial a verdict was returned that it was his
will. A decree was entered accordingly.

Counsel for the plaintiffs in error say: "It is now con-
ceded, for the contestants, that the evidence on the ques-
tion of unsound mind and memory, undue influence, and
on the reading of or knowledge of the contents of the
will by the deceased, was sufficient to warrant the ver-
dict of the jury if they had been properly instructed as
to the law, and there is not much fault to be found with
the instructions on those questions." The only fault that
is found with the court about the instructions on those
questions is, that it failed to instruct the jury that the
burden of proof was on James H. Connell, attorney of
the testator, who was one of the executors and a bene-
ficiary under the will, to disprove undue influence on his
part. The court seems to have given all instructions
asked by contestants on the subject of undue influence,
and no instruction of this kind was asked for. If they
desired to present the question where the burden of proof
would be under such circumstances, they should have
asked for an instruction presenting their view of the law.
The court was not in error in failing to give an instruc-
tion not asked for, and those which were given were cor-
rect in defining undue influence.

The only other assignment of error argued by counsel
relates to the giving and refusal of instructions on the
question of what is a sufficient attestation of a will in the
presence of the testator. The evidence on that question
was, that the witnesses subscribed their names to the
attestation clause at a desk in the same room with the
testator, who was either sitting on the side of the bed or
lying down upon it. The court gave, at the request of

the proponents of the will, the following instructions as to the requirements of the law:

24. "Relative to the witnessing or attestation of the alleged will in question, the court instructs the jury that the statute of Illinois provides that all wills shall be attested, in the presence of the testator, by two or more credible witnesses; and if you believe, from the evidence, that William Drury signed the alleged will in question in the presence of Arthur W. Mannon and Richard H. Roberts, and after he so signed the same they took said will to a writing desk a short distance from the foot of the bed and within the range of testator's vision, and that the said William Drury was sitting on said bed, and they there subscribed their names to the attestation clause of said alleged will in full and uninterrupted view of the said testator, then this is a sufficient attestation of the will in question and a full compliance with the law on that subject."

25. "You are further instructed, that if you believe, from the evidence, that at the time of the alleged attestation of William Drury's alleged will now in dispute, that the alleged witnesses were in the same room with said William Drury and only a few feet from him, with the view between him and them uninterrupted and they within the range of his vision; and if you further believe, from the evidence and the then surrounding circumstances proved upon the trial, in connection with the alleged attestation of said alleged will, that said William Drury, taking into account his then condition or state of health and his then position as shown by the evidence, either saw, or could have seen if he had wished to and had looked in the proper direction, the alleged witnesses themselves, and enough of the act then being done by them to know on his part (from what he so saw or might have seen if he had wished, and from what he knew of the then surrounding circumstances,) that the alleged witnesses were then signing their names as witnesses to

his, William Drury's, proposed will, then upon that question you should find the alleged will in question to have been properly attested."

The court also gave the following instruction presented by the contestants:

15. "While the presumption of the law is, that where the will is signed by the attesting witnesses in the same room with the testator that it is signed in his presence, yet that is only a presumption; and where the evidence shows that the witnesses were in such position that the testator could not see the paper nor see the witnesses when signing it, the presumption of the law is overcome."

And the following instruction was written and given by the court on its own motion:

16. "To make a legal attestation the test is, was there an uninterrupted view between the alleged testator and the subscribing witnesses, and were the witnesses within the range of the (alleged) testator's vision (his then condition as to health and posture being considered) when the alleged attesting was done? Was the alleged will then present, and could the (alleged) testator in his then condition and posture have seen, if he had wished to and had looked in the proper direction, enough of the persons of the alleged witnesses, and enough of the act then being done by them, to know on his part (from what he could so have seen if he had wished to and from what he knew of the then surrounding circumstances) that the (alleged) witnesses were then signing their names as witnesses to the (alleged) testator's proposed will?"

The court transposed the word "not" from one place to another in the fifteenth instruction, but the meaning was not affected thereby, and the sixteenth seems to have been prepared and given as a substitute for three instructions asked by the contestants. The first two of the instructions asked were substantially correct and might properly have been given, but we think that the one written by the court and substituted was sufficient to

present fairly to the jury, with the other instructions which were given, the principles of law contained in the instructions so offered.

The statute requires that a will shall be attested, in the presence of the testator, by two or more credible witnesses, who see him sign the will in their presence or acknowledge the same to be his act and deed. This act of attestation consists in the subscription of the names of the witnesses to the attestation clause as a declaration that the signature was made or acknowledged in their presence. It is this act of attestation, by subscribing their names to the will as witnesses thereto, which the statute requires to be in the presence of the testator. The object of the law, as frequently declared, is to prevent fraud or imposition upon the testator, or the substitution of a surreptitious will, and to effectuate that object it is necessary that the testator shall be able to see and know that the witnesses subscribe their names to the paper which he has executed or acknowledged as his will. The purpose of the statute is not attained by mere ability to see the witnesses or some part of them, but the act of attestation is the thing which must be in the presence of the testator. In the case of *Witt* v. *Gardiner*, 158 Ill. 176, the rule as to what constitutes the "presence" of the testator, within the meaning of the statute, was considered and settled. The rule as so determined is, that "contiguity, with an uninterrupted view between testator and subscribing witnesses, is the indispensable element of the physical signing in the testator's presence." It is immaterial that he does not see if he might have done so, but no mere contiguity of the witnesses will be sufficient if the testator cannot see them sign. Nothing will constitute a "presence," within the meaning of the statute, unless the testator can from his actual position see the act of attestation. We do not think that these instructions conflict in any way with this rule. Of those given for the proponents, the twenty-

fourth required that the attestation clause should be signed by the witnesses within the range of testator's vision and in his full and uninterrupted view. The twenty-fifth made the conditions of a valid attestation that the witnesses were in the same room with the testator and only a few feet from him, with the view between him and them uninterrupted and they within the range of his vision, and that he saw or could have seen them, and enough of the act being done to know that they were then signing their names as witnesses to his will. The fifteenth given for the contestants told the jury that the presumption the will was signed in the testator's presence would be overcome by evidence that he could not see the paper nor the witnesses when they signed. The sixteenth, written by the court, required that the testator, in his then condition and posture, could have seen enough of the witnesses, and also enough of the act being done, to know that they were signing their names as witnesses to his will. We do not think the jury would understand, in view of all these instructions, that it would be sufficient if the testator knew, or inferred from the surrounding circumstances, that the witnesses were attesting his will although he could not see them sign it. It would not be an attestation in the presence of the testator if he could not see the act of attestation, but merely understood from the surrounding circumstances that the act was taking place. We think the jury would understand from the instructions, taken together, that the act of attestation must be performed within the range of the testator's vision, and in such a way that he could know that it was his will which was being attested, and could see the act of signing.

This is the only matter argued, and finding no prejudicial error in the action of the court the decree is affirmed.

*Decree affirmed.*

Mr. Justice Boggs took no part in this decision.