**EARL et al. v. MUNDY. (No. 1148.)**

(Court of Civil Appeals of Texas. El Paso. Jan. 13, 1921. Rehearing Denied Feb. 10, 1921.)

1. Wills &#8734;123(5)—Witnesses held to have subscribed names in "presence of testator" within statute.

Where testator signed his name to an instrument in the presence of the two subscribing witnesses, and called upon the two to witness what he had said and done with reference to the paper, and where the witnesses carried the instrument from the bed on which the testator was lying to a table only 10 feet from testator, signed it, and returned with it to the testator, there was a valid execution of the codicil under Vernon's Sayles' Ann. Civ. St. 1914, art. 7857, requiring witnesses to subscribe their names in the presence of the testator, though at the time the witnesses signed the paper their backs were toward testator, and their bodies between testator and the paper they were signing.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Presence of the Testator.]

2. Wills &#8734;372—Testimony given In county court that testator had a disposing memory properly read in district court.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3273, 3275, subscribing witnesses' testimony, given in the county court during a will contest, that testator at time of signing the codicil "was of sound and disposing mind and memory," committed to writing under such statutes, held properly read in the district court during the trial on appeal from the county court's order, as against the contention that witness could not testify that the testator had a disposing memory.

3. Wills &#8734;292—Amount of physician's bill for operating on testator immaterial in will contest.

In a will contest, exclusion of testimony as to the amount of the physician's bill for operating on testator during his last illness held proper; such testimony being irrelevant and immaterial.

4. Wills &#8734;329(5)—Refusal to indicate portion of testator's property which was community property held proper.

In contest of will making testator's wife principal beneficiary, on ground of undue influence and mental incompetency, court's refusal to define the part of testator's property which was community property held proper; such matter being foreign to the issues.

5. Appeal and error &#8734;1060(1) — Remark of counsel during argument to jury held not ground for reversal.

In contest of will making testator's wife principal beneficiary, on ground of undue influence, where testator's deed to wife had been introduced in evidence to show the wife's influence over testator, and where there was evidence that a suit was pending to cancel the deed, remark of proponent's attorney in argument to the jury that no sooner was testator "cold in his grave" than contestants began suit against his widow to set aside the deed he had made her to the homestead, held, if error, not ground for reversal.

6. Wills &#8734;389—District court's order, probating will and codicil on appeal from county court's order in so far as it probated codicil, not error.

Where probate of a will and codicil was allowed by one order, it was not error for the district court, on appeal from that part of the order admitting the codicil to probate, to enter judgment probating both will and codicil, the codicil being merely a part of the will.

7. Wills &#8734;369, 374—Appeal to district court from county court's order probating will requires a trial de novo and stays proceedings.

An appeal to the district court from an order of the county court probating the will, requires a trial de novo, and suspends the final judgment, leaving the estate unsettled pending the appeal.

8. Trial &#8734;296(9)—Instruction on mental capacity held not on weight of evidence in view of other instructions.

In a will contest, instruction that ordinarily less mental capacity is requisite to enable a

---

&#8734;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

person to make a will, or a codicil to a will, than is necessary for the same person to make a contract or to engage in an intricate or complex business matter, *held* not on the weight of the evidence, in view of other instructions.

**9. Wills ⊜55(1)—Greater weight of credible evidence sufficient to establish testamentary capacity.**

In a will contest, proponent is required to establish testamentary capacity merely by the greater weight of the credible evidence; it being unnecessary that testamentary capacity be clearly shown.

**10. Wills ⊜360—Objection cannot be·made to instruction for first time in appellate court.**

In will contest, objection that charge on proponent's burden of proving testamentary capacity was a violation of Vernon's Sayles' Ann. Civ. St. 1914, art. 3271, was not available on review, where not urged in lower court, in view of Acts 33d Leg. (1913) c. 59.

**11. Appeal and error ⊜301—Refusal of instructions to be available on appeal must be complained of in motion for new trial.**

Under Acts 33d Leg. (1913) c. 136 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612), refusal of instruction not complained of in motion for new trial will not be considered on appeal.

**12. Appeal and error ⊜719(7)—Refusal of instruction waived by failure to assign it as error.**

Error in refusal of instruction, not assigned as error in appellate court, will be deemed waived.

**13. Trial ⊜194(9), 240—Wills ⊜332—Instruction on undue influence held not on weight of evidence or argumentative or confusing.**

In will contest, instruction that every influence operating on testator's mind will not invalidate the will, that influence to invalidate will must be undue influence, and that a mere request, entreaty, persuasion, or argument does not necessarily amount to undue influence, even though it affects the testator's mind, unless it overcomes his will, *held* not erroneous as against objection that it was on the weight of the evidence argumentative, and confusing.

**14. Wills ⊜384—Erroneous instruction on issue as to which there was no sufficient evidence for submission to the jury harmless.**

In will·contest, where the evidence was not sufficient for submission of issue of undue influence to the jury, instruction on undue influence, if erroneous, *held* harmless.

**15. Wills ⊜384—Exclusion of evidence on certain issue harmless, where evidence was not sufficient to go to jury.**

In a will contest, exclusion from consideration of the jury of proponent's evidence tending to show undue influence, if error, was harmless, if there was not sufficient evidence for submission of issue of undue influence to the jury.

**16. Wills ⊜384—Instruction excluding proponent's evidence on certain issue harmless, where proponent had not introduced any such evidence.**

In will contest, instruction excluding from jury's consideration evidence introduced by proponent tending to show undue influence, if error, was harmless, where proponent had not introduced any evidence on such issue.

**17. Trial ⊜296(7)—Error in excluding testimony from jury's consideration held cured by other instruction.**

In will contest, error, if any, in instructing the jury not to consider evidence introduced by proponent tending to show undue influence was cured by other instruction requiring jury to consider "all the facts and circumstances in evidence before you" on such issue.

**18. Wills ⊜384—Admission in district court of certified copy of testimony given in county court harmless, where witness testified to same facts in person.**

Admission, in district court on appeal from order of county court probating will, of certified copy of testimony taken in county court, under Rev. St. 1911, arts. 3273–3275, if error, was harmless, where the witness testified fully to the same facts in the district court.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Proceedings for probate of will of J. J. Mundy, deceased, by Harriet Mundy, contested by Ella D. Earl and others. From that part of the judgment admitting the codicil to probate, the contestants appeal. Affirmed. See, also, 227 S. W. 970.

Lea, McGrady, Thomason & Edwards and L. A. Dale, all of El Paso, for appellants.

F. E. Hunter and Davis & Goggin, all of El Paso, for appellee.

WALTHALL, J. Harriet Mundy, appellee, offered for probate in the county court of El Paso county, Tex., the last will and testament, and the codicil thereto, of J. J. Mundy, deceased. The will was dated October 8, 1919, and the codicil dated October 14, 1919. The will and the codicil were by the order of the county court admitted to probate as the last will and testament of J. J. Mundy, and a judgment to that effect was duly entered by the court. Appellants herein had the following entry made in the judgment:

"To such of the foregoing judgment as establishes and admits to probate said codicil dated October 14, 1919, as a part of the last will of said decedent, the contestants, Ella D. Earl, W. H. Earl, and Nellie M. Stewart, D. P. Stewart, Clara' Mundy, Robert Mundy, Laura A. Kinkle and C. A. Kinkle, in open court, excepted and gave notice of appeal to the Forty-First judicial district court."

The contest of appellants to the probating of the codicil of the will is based on the al-

legation in the contest filed that the alleged codicil is not any part of the will of said decedent, nor was the same his act, for the reason that when he signed the same, if he ever did, he was not then of sound or disposing mind, and that same was procured by undue influence practiced upon him by Harriet Mundy, the principal beneficiary therein. Contestants in their appeal from the order of the probate court filed their appeal bond, in which it is recited:

"From which judgment, in so far as it admits to probate said alleged codicil dated October 14, 1919, said contestants desire to perfect an appeal to the district court of El Paso county, Tex., in and for the Forty-First Judicial District."

The cause was tried de novo in the district court, and judgment there rendered, admitting the will and codicil to probate. A motion was made to set aside the verdict and judgment and to grant a new trial, which motion was overruled, and contestants gave notice and perfected an appeal to this court.

Appellants, in their brief present the proceeding as one to probate a codicil to the will, and that the appeal was taken from the order probating the codicil. The case was tried on appeal in the district court before a jury, on special issues, resulting in a judgment probating the will and codicil. J. J. Mundy made his will on the date stated, by which he gave the Episcopal Church $2,000, F. H. Nolte and Robert Narzinski $1,000 each, $500 per month to his wife, Harriet Mundy, for her life, made her independent executrix without bond, and gave her possession of the estate as trustee during her life, subject to the foregoing; gave one half of his estate in trust for his sister, Ella Earl, the other half in trust for Lizzie Mundy, the widow of a deceased brother, for life; the remainder to his nieces, Nellie Stewart, Laura Kinkle, Clara Mundy, and nephew, Robert Mundy, children of the deceased brother. The will was probated in the county court of El Paso county, and no appeal was taken therefrom except as to the codicil. Harriet Mundy at the same time offered for probate the codicil to the will, dated as above, of J. J. Mundy, by which $3,000 instead of $2,000 was given to the Episcopal Church, a Mr. Miller, not mentioned in the original will, was given $500, and Harriet Mundy, testator's wife, appellee herein, was given $1,000 per month for her life, instead of $500, as in the will, or, at her option testator's one half interest in the Ellanay Theater property, in El Paso, absolutely. J. J. Mundy died after an operation, about 18 hours after making the codicil to his will.

Appellee filed a motion in this court to require appellants to file an adequate bond herein for the protection of the rights of the parties, and in case of failure to do so, to dismiss the appeal. The grounds of the motion are stated to be that no proper or sufficient appeal bond or supersedeas bond has been filed to support this appeal, and that the instrument filed herein purports to be a supersedeas bond in the sum of $1,000, but that it is insufficient in law, and without effect as a supersedeas bond, the amount not having been fixed by the court or any other authority in said amount.

Appellants gave due notice of appeal, and filed their bond within the time required. The bond recites that a final judgment was rendered by the court in the case, giving the date of its rendition, the number and style of the case, recites that the court admitted to probate as a part of the last will of J. J. Mundy, deceased, a certain document "bearing date October 14, 1919, and purporting to be a codicil made by the decedent to his last will of date October 8, 1919, from which judgment the herein named appellants have appealed to the Court of Civil Appeals and desire to suspend execution on the judgment pending appeal." The rest of the bond is in the usual form of a supersedeas bond, acknowledging themselves bound in the sum of $1,000, and conditioned as required by article 2101, Vernon's Sayles' Texas Civil Statutes. The bond is approved and filed by the clerk. The record does not show that the clerk of the court from which the appeal is prosecuted fixed the probable amount of the costs of the suit in the Court of Civil Appeals, Supreme Court, and the court below, but certifies only the amount of the costs that had accrued in the district court to be $73.30.

The clerk of the trial court under the statute fixes the amount of the bond, whether the bond is a cost bond or a supersedeas. In Davis, Collector, v. Burnett (Sup.) 7 S. W. 678, and in Horstman v. Little, 98 Tex. 342, 83 S. W. 679, the Supreme Court in each of the cases states the rule to be that the approval of the bond by the clerk was sufficient evidence that it was in double the amount of the probate costs as fixed by him. The bond being in form of supersedeas covers all the elements of an appeal bond for costs. Zapp v. Michaelis, 56 Tex. 395. The judgment of the trial court admitted the will and codicil to probate and record as such. No judgment was rendered against appellants, not even for costs; but, assuming that appellants, if cast in the suit, would be liable for costs in the trial court and on appeal, and the amount of execution of the judgment suspended, it is not made to appear just what amount of execution of the judgment more than costs would be suspended by the giving of a supersedeas bond, so as to determine the amount for which the bond should be given if for more than for costs. In Crary v. Port Arthur, O. & D. Co., 45 S. W. 842, in a condemnation proceeding, and in which it was held that, like other judgments, a judgment in condemnation proceedings under the present law can-

not be enforced if there is a supersedeas bond until after final adjudication in the court of last resort; and also held, as to the sufficiency of a supersedeas bond conditioned as required by law, that where no money judgment was rendered against appellant he should not be required to give a bond in double the value of the right of way as ascertained by the judgment of the court. The court further held that the bond being for more than double the amount of the probable costs as fixed by the clerk would be sufficient as a supersedeas. We are of the opinion and so hold that the bond found in the record is not subject to the criticism pointed out in the motion, and that the motion should be overruled.

By the first assignment appellants complain of the following charge as being upon the weight of the evidence:

"Ordinarily less mental capacity is requisite to enable a person to make a will or codicil to a will than is necessary for the same person to make a contract, or to engage in a struggle with another in which he is bartering to secure the best terms, or to engage in an intricate or complex business matter."

The statute provides that, in instructing the jury, the judge shall not charge or comment on the weight of the evidence. To be competent and have power to make the codicil to his will, J. J. Mundy, at the time of making the codicil, must have been "of sound mind." Article 7855, V. S. Tex. Civ. Statutes. The inquiry to which the attention of the jury was called by the above charge was the vital one in the case, the inquiry as to the testamentary capacity of J. J. Mundy at the time he executed the paper admitted to probate, as a codicil to his will. The matters in the given charge to which the mind of the jury was directed were not necessary, were more or less confusing, and were misleading. It was necessary and would be proper to direct the jury to inquire as to the capacity of the testator to know and understand the nature and effect of the matters stated in the paper he was then signing, but, as said by the Supreme Court on the first appeal, in Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606, it may be doubted if charges enumerating so many things have a tendency to enable juries as clearly to understand their duties in such cases as would a simple charge to the effect that one had testamentary capacity if his mind and memory, at the time the paper was executed, were sufficiently sound to enable him to know and understand what he was doing in executing the paper and the effect of his act.

On the second appeal of Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64, one of the grounds of error presented was the refusal of the trial court to give a somewhat similar charge to the one presented here, and in which the jury were instructed that the law does not require the same amount of mental capacity to make a valid will as to make an ordinary contract. The Supreme Court held that the trial court was not in error in refusing to give the charge; that there was no reason to inform the jury that the law required a less amount of capacity to make a will than an ordinary contract; that the jury would not be presumed to know what degree of capacity the law required to make a contract, and therefore could not make any proper comparison between the capacity of the testator as shown by the evidence, and that which the law requires to enable him to make a binding contract. But while the Supreme Court held that the charges were improper, in the first instance, holding that the charge tended to mislead the jury, and, in the second instance, that there was no reason to inform the jury that a less capacity was required to make a will than to make a contract, in neither instance did the court suggest that the charge was upon the weight of the evidence. In giving the charge complained of the trial court evidently had in mind the sixth paragraph of the general charge in Prather v. McClelland, 76 Tex. 574 (585) 13 S. W. 543. In that case we have the same charge, substantially, that we have here. There objection was made to the sixth paragraph of the charge, and correct propositions proper to be given submitted. The court reversed the case, but, as we view it, held that the sixth paragraph of the charge was substantially correct, and that in so far as the charges refused embraced correct propositions proper to be given, they were sufficiently embraced in the charges given.

While the holding in the Prather v. McClelland Case, seems not altogether in harmony with the holding in the Brown v. Mitchell Cases, we are of the opinion that the charge is not objectionable as being upon the relative weights of the evidence.

In the ninth paragraph of the general charge the court instructed the jury that the burden of proof as to establishing testamentary capacity was upon appellee, and that she must establish such capacity by a preponderance of the evidence, and that a preponderance of the evidence is the greater weight of credible evidence. Appellants excepted to the charge on the ground that the law is that such testamentary capacity must be "clearly shown." Such is not the requirement of the statute.

By the third assignment it is insisted that the seventh paragraph of the court's main charge is erroneous as being upon the weight of the evidence, is argumentative and confusing, in presenting the issue of undue influence. The charge reads:

"As to the issue of undue influence, you are charged that it is not every influence operating upon the mind of the testator at the time of executing a will or codicil to a will that will

invalidate the same. The influence, to have such effect, must be undue influence. A mere request, entreaty, persuasion, or argument does not necessarily amount to undue influence, even though same should have an effect on the mind of the testator, unless same overcomes the will of the testator."

In our opinion the charge is not upon the weight of the evidence, nor is it argumentative or confusing. It is more a statement in negative form of elements of influence which could properly be exercised upon the mind of the testator, and which would not in law be deemed undue, unless the influence exerted overcomes or destroys the will or free agency of the testator. The charge is more in illustration of what does not constitute undue influence than in definition of the term or in statement of what constitutes undue influence. Associate Justice Neill, in Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98, makes an admirable statement of what would and what would not constitute undue influence. We need not quote the opinion, but refer to it, and the authorities there used, for a correct exposition of undue influence. The eighth paragraph of the charge is a restatement of what is meant by undue influence. The two paragraphs are not in conflict.

Error is assigned to the tenth paragraph of the court's general charge which reads as follows:

"As to the issue of undue influence the burden of proof is upon the contestants. That is, they must establish same by the greater weight of credible evidence."

The proposition under this assignment is to the effect that since there was evidence by proponent which tended in a material degree to prove undue influence, and on which contestants relied, it was error for the court to instruct the jury as above. A careful reading of the evidence fails to disclose to us any such evidence on which we could say appellants could rely as tending to show undue influence. The burden of proof was upon appellants to show undue influence.

We think the form of the charge in which the issue was submitted is not to be commended. It is possible that one, not learned in the law, would construe the expression in the charge, "they must establish," as excluding all evidence not offered by appellants, while the jury could look to all the evidence offered in the case. From the view we take of the evidence that could possibly be excluded from the consideration of the jury under the charge, we cannot say as matter of law that the charge presents affirmative reversible error. The objectionable feature of the charge, we think, was cured by another charge, directing the jury to consider all the evidence in the case. In considering this assignment we have reviewed the following cases: Texas & Pacific Ry. Co. v. Reed, 88 Tex. 439, 31 S. W. 1058; St. L. S. W. Ry. Co. v. Groves, 44

Tex. Civ. App. 63, 97 S. W. 1084; G., C. & S. F. Ry. Co. v. Hill, 95 Tex. 629, 69 S. W. 136; Gulf, C. & S. F. Ry. Co. v. Loyd, 175 S. W. 721; Daley v. Whitacre et al., 207 S. W. 350; Rounds v. Coleman, 189 S. W. 1086.

By the fifth assignment error is predicated upon the refusal of the court, on request of appellants, to submit the question of whether or not the codicil to the will was attested by the subscribing witnesses in the presence of the testator. Under this assignment appellants present the following proposition:

"The evidence being sufficient to show that at the time J. J. Mundy made the codicil in question he was in a very weak condition, both mentally and physically, and only raised his head and shoulders from the bed long enough to sign his name to the codicil, and immediately laid back upon the bed upon his back, and thereupon the paper was taken to a desk in the far side of the room by one of the subscribing witnesses, some 10 or 15 feet away, and there the subscribing witnesses, respectively, signed their names, while sitting in a chair with their backs to the testator and in such position as that the paper, lying upon the desk, and the arm, hand, and pen doing the writing were at the time wholly shut off from the view of the testator by the bodies of the witnesses, so that the testator could not see or know what the subscribing witnesses were doing, nor, in fact, what paper they were pretending to witness, and the witnesses not having acknowledged or exhibited their signatures to the testator after signing same, and the testator lying upon the bed in such position as that he could not move without considerable effort and pain, there was not such an attestation by the witnesses subscribing their names in the presence of the testator, as required by the statute, as to make it a valid will, and such issue should have been submitted to the jury; contestants having requested same."

The proposition, in our judgment, states the facts stronger than the evidence justifies. Mrs. Wilson, one of the two subscribing witnesses to the codicil, Judge F. E. Hunter, being the other subscribing witness to the codicil, testified:

"Mr. Mundy was in bed at time he signed that paper (codicil); he was not propt up in bed. He was in that position when he signed the paper. Judge Hunter and I signed the paper at the desk in the room where he was, but I can't say how many feet from where he was, but it is back from the bed by the window. The alcove of the room I judge was about 17 feet from his bed. It was a flat-top desk. There was a chair there at that desk where you could sit down and write. Judge Hunter signed first, then I signed. He signed, then got up and gave me the pen. I sat down and signed. At the time I was sitting down at the desk I could not see Mr. Mundy. I had my back to him, and when Judge Hunter signed the codicil he had his back to Mr. Mundy. He was not sitting up that morning, but reclining most of the time. Mr. Mundy sat up in bed and signed this codicil. When he signed it he laid back.

down again. The desk is over close to the window. At the time I signed this paper I was sitting there at that desk with my back to Mr. Mundy. Judge Hunter was in the same way when he signed it. At the time I signed this paper I was sitting there at that desk with my back to Mr. Mundy. My body was between the paper and Mr. Mundy. Judge Hunter was the same way when he signed it."

Judge Hunter testified:

"After the codicil was signed and I folded it up and handed it to him, Mundy, I asked him 'what he wanted done with it, and he said: 'Well, take it back and put it in your safe.'"

There is no evidence in the record tending to show the facts to be other than the above. Our statute (article 7857, V. S.) provides that every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator, and be attested by two or more credible witnesses above the age of 14 years, subscribing their names thereto in the presence of the testator.

The question is presented: Under the above statement of the evidence was the court in error in refusing to submit to the jury the requested issue, viz.:

"Do you believe from the evidence that at the very time F. E. Hunter (and in the other charge, Mrs. Josephine Wilson, the other subscribing witness to the codicil) was writing his name upon the codicil in question as a subscribing witness, J. J. Mundy was in such position as that he could then, without leaving his bed, have seen such codicil, or have seen the hand of F. E. Hunter (and in the other charge, Mrs. Wilson) with which he was then writing his name?"

The statutes requiring only that the witnesses subscribe their names to the codicil in the presence of the testator, the facts submitted in the requested charge would be but evidentiary facts to be considered in determining the proper attestation of the codicil. We doubt whether the evidence is such as to justify the submission of the special charge. There is no evidence in the record as to whether the testator was in such position that he could have seen the codicil, had he so desired, or have seen the hand of either of the subscribing witnesses while signing their names as witnesses. The only statement throwing any light upon the facts sought to be submitted in the requested special charge is, as testified to by Mrs. Wilson, that while signing her name she could not see Mr. Mundy; that she had her back to him; that her body was between her hand while signing; and that when Judge Hunter signed he was in the same position as she was.

We think, however, the question presented as to whether the evidence shows that the two subscribing witnesses subscribed their names to the codicil in the presence of the testator was a substantial compliance with the requirement of the statute, essential to the valid execution of the codicil.

So far as we have examined the question here presented is of first impression in this state in the meaning to be given the expression "subscribing their names thereto in the presence of the testator" in the attestation of wills. There is a diversity of holding in other jurisdictions. Appellants refer us to Graham v. Graham, 32 N. C. 219, and Burney v. Allen, 125 N. C. 314. The latter case is reported in 34 S. E. 500, 74 Am. St. Rep. 637. By a majority opinion in the last-named case the Supreme Court of North Carolina, after reviewing Graham v. Graham, and other cases, holds that a testator must actually have seen, or been in a position to see, the paper writing itself, at the time the witnesses signed it. In the same state, in Bynum v. Bynum, 33 N. C. 632, and Cornelius v. Cornelius, 52 N. C. 593, a slightly different view is expressed. A holding similar to Burney v. Allen, supra, is made in Downie's Will, 42 Wis. 66.

In Howard's Will, 5 T. B. Mon. (Ky.) 199, 17 Am. Dec. 60, the Supreme Court of Kentucky held that an attestation in the same room with the testatrix is a sufficient subscription in her presence. In Healey v. Bartlett, 73 N. H. 110, 59 Atl. 617, 6 Ann. Cas. 413, the Supreme Court of New Hampshire held that—

"When the testator is not prevented by physical infirmities from seeing and hearing what goes on around him, it is the general, if not the universal, rule that his will is attested in his presence if he understands and is conscious of what the witnesses are doing when they write their names, and can, if he is so disposed, readily change his position so that he can see and hear what they do and say. * * * In other words, if he has knowledge of their presence, and can, if he is so disposed, readily see them write their names, the will is attested in his presence, even if he does not see them do it, and could not without some slight physical exertion. It is not necessary that he should actually see the witnesses for them to be in his presence. They are in his presence whenever they are so near him that he is conscious of where they are and * * * what they are doing, through any of his senses, and are where he can see them if he is so disposed."

In re Tobin, 196 Ill. 484, 63 N. E. 1021, after reviewing Drury v. Connell, 177 Ill. 43, 52 N. E. 368, the Supreme Court of Illinois said:

"In the case at bar we think there is no doubt that the testator could have seen the table and the witnesses if he chose to look, but he could not see the pen in the hand of any witness tracing the letters of the witness' name. He could see the witness Mukautz take the will and lay it down on the table, and see each of the witnesses step up to the table and bend down over it while signing. Whether he could see any part of the will while they were in the act of signing does not appear, but he

saw, or could have seen, Mukautz place the will on the table, and that there was no other paper there, and could have seen the will itself on the table, when his view was not obstructed by the body of the witness while subscribing his name. He had just heard the will read, and had asked the witnesses to sign it. The table was directly, or nearly so, in front of him, less than 10 feet away; and he could see the witnesses over the footboard of the bed while they were in the act of signing their names, although he could not see the pen, or the letters traced by it, and probably not the hand that held the pen. * * * We have never held that it is necessary to a valid attestation that the testator must be able to see the pen and the letters composing the witness' name as the former is held and the latter are traced by the subscribing witness. If he can see the act of attestation, that is, can see enough of the act of signing to know that the witnesses and the will are in his presence, and that the former are at the time signing their names as witnesses to his will in accordance with his request, that will be sufficient. It is necessary only that the attestation be done in his presence, and that he be able to see the act."

[1] We have concluded that the uncontroverted evidence is sufficient to show a proper attestation of the codicil to the will.

The testator had just had the codicil read to him by Judge Hunter, one of the subscribing witnesses, and had then signed his name thereto in the presence of the two subscribing witnesses, and had declared the paper to be a codicil to his will, and had then called upon the two to witness what he had said and done with reference to the paper. They immediately carried the paper from the bed on which the testator was lying to a table in the room in which the testator was, signed it, returned with the paper to the testator, and asked what he wanted done with it. While the witnesses were signing the paper, some 10 feet distant from the testator, their backs were toward the testator and their bodies between the testator and the paper they were signing. He could see the witnesses, knew they had gone to the desk with the paper he had requested them to sign, and with the accepted purpose of signing it, and could see all of the movements of the witnesses, and that they were in the act of signing the paper. The evidence discloses only that the backs of the witnesses were toward the testator and their bodies between the testator and the writing. The evidence does not disclose what the testator could have seen as to the paper and the writing on the paper had he desired to do so. We are of the opinion that the uncontradicted evidence shows that the witnesses while signing the paper were in the actual and conscious presence of the testator, and that it was not essential to a proper attestation of the codicil that the testator, without leaving his bed, could have seen the codicil, or have seen the hand of the witness, Mrs. Wilson, or the

hand of Judge Hunter, with which she and he were then signing the paper, as submitted in the requested charge.

[2] What we have said in discussing the fifth assignment applies to assignments sixth and seventh. They are overruled. Over objection of appellants, the court permitted to be read to the jury that part of the testimony of the subscribing witness, Mrs. Wilson, to the codicil, as reduced to writing and sworn to in the county court in probating the will and codicil, reading:

"At the time of making the said codicil to the said last will, the testator (J. J. Mundy) was of sound and disposing mind and memory."

Appellants' objection was to the words, "and disposing." It is insisted that the witness could not testify that the testator had a disposing memory. While not using the same words the witness testified, in effect, to the same condition of mind on the trial in the district court.

Articles 3273 and 3275, V. S. Tex. Civ. Statutes, provide that all testimony taken in open court upon the hearing of an application to probate a will shall be committed to writing at the time it is taken, and subscribed in open court by the witness and filed with the clerk, and that a certified copy of such record of testimony may be read in evidence on the trial of the same matter in any other court when taken there by appeal or otherwise. In admitting the evidence we think there was no error. Beeks v. Odom, 70 Tex. 183, 7 S. W. 702; Prather v. McClelland, 76 Tex. 574, 13 S. W. 543; Cook v. Denike, 216 S. W. 438.

[3] The court was not in error, as submitted in the ninth assignment, in excluding the question of appellants to Dr. Hugh Crouse, on cross-examination, asking witness to state the amount of his bill rendered against the estate of J. J. Mundy, deceased, for operating upon him in his last illness. The matter was wholly irrelevant and immaterial to any issue in the case.

[4] By the tenth, eleventh, twelfth, and thirteenth assignments, error is assigned to the refusal of the court to give appellants' special charge, and in omitting to give a charge defining to the jury what property of J. J. Mundy was community property, and what property was his separate property. It is insisted that the jury should have been instructed as to the law of Mrs. Mundy's rights in his estate, independently of the will, and how much of the community estate she was getting in addition to that which she would take under the will or codicil. The court was not in error as claimed in these assignments. It is insisted under these assignments that without such charge the jury would perhaps consider that all that Mrs. Mundy would get of the community estate would be that given her by the will and codicil. The only issues for the jury to

determine are conditions of Mr. Mundy's mind at the time of making the will and codicil, and the issue of undue influence. Should such charge be given as suggested, the jury would likely get the idea that it would be their duty to determine how Mr. Mundy should have divided his property. It seems to us that the charge was foreign to any issue the jury was to determine, and would have been misleading.

[5] The fourteenth assignment claims error on the part of the court in permitting one of proponent's attorneys in the closing argument to state to the jury that no sooner was Mr. Mundy cold in his grave than contestants began a suit against his widow to set aside the deed he had made her to the homestead, on the ground that such statement was highly inflammatory and not justified by the facts. The facts leading up to the remarks of counsel, of which complaint is made, are lengthy, but, as briefly as we can state them, they are substantially as follows: Appellants had introduced in evidence, over objection, a deed from Mr. Mundy, conveying the homestead to his wife, proponent herein. In offering the deed appellants' counsel stated the purpose for which it was offered, among them, to show the transactions between Mundy and wife, her influence over him, the extent of her estate, the extent and nature of Mundy's estate, the facts surrounding same, because of its date and the date of its recording, as impeaching the testimony of the witness, Hunter, and, affecting his credibility in view of what he testified about the deed, and his relations as attorney for Mrs. Mundy. At the time the deed was offered in evidence there was a suit pending in which contestants were seeking to have the deed canceled. On cross-examination appellants elicited from F. E. Hunter evidence covering many pages of the record, going into much detail as to the conditions and circumstances under which the will and codicil were written, the condition of Mundy's health at the times the will and codicil were made, Mundy's estate, the relation witness sustained as attorney to Mrs. Mundy and the estate, and in which it appeared that the witness had written the will and the codicil, and was at the time of the trial representing the estate in the probate of the will. Appellants asked the witness if it was not true that he had "telephoned to Mr. Nolte the next day—if not the next day, then the next day—for him to take out of the safe at the Commercial Company's office the deed that had been in Mr. Mundy's possession for more than 10 years, of which the home, the Mundy home, was conveyed to Mrs. Mundy, and telephoned to Mr. Nolte to take that deed and place it of record," to which he answered, "It is not." The witness stated, further, that he represented Mrs. Mundy in the suit brought by contestants· to cancel the deed, in conjunction with Judge Goggin;

that he was taking steps to uphold the deed as against the claims of the legatees. It does not appear just when the suit to cancel the deed was filed, except that it was filed at a time between Mr. Mundy's death on October 15, 1919, and the time when the argument was made on the trial of this case in April, 1920.

On the trial, on cross-examination appellants elicited from the witness Nolte, an employé of Mr. Mundy, and the Commercial Company with which Mr. Mundy was connected, since 1907, that one of appellants, Mr. C. A. Kinkle, had called him over the phone and asked him about the deed from Mr. Mundy to Mrs. Mundy; that he declined to tell him anything he knew about it at that time; he had also declined to give contestants any information about the Mundy estate; witness had talked freely with Mrs. Mundy, and gave her the information she asked for. The attorney for proponent in the argument to the jury said:

"If you ask for my opinion as to why Mr. Kinkle was not readily given the information, I will tell you why I think it is. I think it is because as soon as Mr. Mundy died, they began to litigate and harass his widow with suits, that is the reason."

Appellants objected to the remark. The objection was overruled. The attorney then used this further language to the jury:

"The record shows, gentlemen of the jury, that they began an attack on this deed made to the ·homestead, made in 1909, which Mr. Mundy conveyed over his own signature and acknowledgment, and it is before you, gentlemen of the jury, to that homestead. It recites a consideration of $18,999.99, cash in hand, paid from Mrs. Mundy to himself for that homestead. No sooner was Mr. Mundy cold in his grave, when that deed was put on record, did they begin a suit to set aside that deed and declare it null and void."

Is the remark reversible error?

The rule is well stated by Judge Rasbury in Winnsboro Cotton Oil Co. v. Carson, 185 S. W. 1002:

"Counsel is at liberty to discuss all facts in evidence or admitted by the pleading, 'arraign the conduct of the parties, and attack the credibility of the witnesses, and he may engage in oratorical conceit or flourish.' He may discuss the failure of parties to the suit to testify, or to call known favorable witnesses. He may draw conclusions or inferences from the evidence adduced and give his opinion thereon," etc.

We are of the opinion that the remark of counsel, if error, is not reversible error.

[6] The court entered judgment probating the will and the codicil. Error is assigned to the judgment on the ground that the record shows that the will was admitted to probate by the county court which is a final judgment, not appealed from or set aside;

the appeal by contestants being only as to the codicil. The insistence is that the trial court had no jurisdiction to probate the original will.

.[7] Appellee presents the proposition that an appeal from the order of the county court, admitting the will and codicil to probate in one order, carried the whole case to the district court for trial de novo. This question, we think, is settled by the Supreme Court against appellants' contention in Callaghan v. Grenet, 66 Tex. 236, 18 S. W. 507, and in Wiren v. Nesbitt, 85 Tex. 286, 20 S. W. 128. The codicil, though a separate paper from the original will, is a part of the will, and the probate of the will and codicil was made, by one order. An appeal from the order probating the will requires a trial de novo and suspends the final judgment leaving the estate unsettled pending the appeal.

Finding no reversible error, the case is affirmed.

HIGGINS, J. (concurring). In this case I desire to indicate the reasons why I concur in overruling the assignments of error presented by the appellants.

1. Under the first assignment, error is assigned to the fifth paragraph of the charge upon the ground that it is upon the weight of the evidence. Paragraphs 5 and 6 of the main charge read:

"(5) Ordinarily less mental capacity is requisite to enable a person to make a will or codicil to a will than is necessary for the same person to make a contract, or to engage in a struggle with another in which he is bartering to secure the best terms, or to engage in an intricate or complex business matter.

"(6) If, at the time of signing of said codicil J. J. Mundy was capable of understanding the nature of the business he was then engaged in, the nature and extent of his property, and .the changes as to disposition of his property, effected by said codicil, and the persons to whom he meant to give it, and mode of distributing same among them, at said time, he was possessed of testamentary capacity. If he did not possess such capability at the time of signing the said codicil he did not have testamentary capacity."

At the request of appellants the court gave their special charge No. 7, which reads:

"In order for J. J. Mundy to have had testamentary capacity on October 14, 1919, at the time of making the codicil in question, he must have then had sufficient mind and memory as to have enabled him to comprehend the nature and extent of his property and the persons to whom he. desired to give the same. And unless you believe from the evidence that he did have testamentary capacity as above defined, you will answer No to question No. 1 propounded in the court's main charge."

The question of testamentary capacity of the deceased was submitted by the court as follows:

"Question No. 1. Was J. J. Mundy, deceased, at the time he signed the instrument dated the 14th day of October, 1919, the said instrument witnessed by F. E. Hunter and Mrs. Josephine Wilson, possessed of testamentary capacity? Answer Yes or No.

"Answer Yes, if you find the affirmative from a preponderance of the evidence, but if you do not so find answer same No."

In the McClelland Will Case, 76 Tex. 574, 13 S. W. 543, Justice Henry, in passing upon a charge containing an instruction substantially the same as here complained of, said that the charge was substantially correct. On the other hand, in Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64, Justice Brown held that it was not error to refuse a special charge instructing the jury "that the law does not require the same amount of mental capacity to make a valid will as to make an ordinary contract. The only capacity the law requires is that the testatrix shall, at the time of making or executing the will, know or understand what she is about, and to whom she is bequeathing or devising her property."

Appellants assert that Brown v. Mitchell holds that such a charge is upon the weight of the evidence. But such was not the ruling. This is what was said:

"There was no reason to inform the jury that the law required a less amount of capacity to make a will than an ordinary contract. The jury would not be presumed to know what degree of capacity the law required to make a contract, and therefore could not make any proper comparison between the capacity of the testatrix, as shown by the evidence, and that which the law would require to enable her to make a binding contract."

[8] In the case at bar question No. 1, presented to the jury for its determination the issue of testamentary capacity, and left it wholly to the jury to decide without any intimation of the court's opinion upon the question. Paragraph No. 5 does not assume any fact nor intimate the opinion of the court as to the testamentary capacity of the testator, and this is especially true when that paragraph is considered in connection with paragraph 6 and the special charge given at the request of the appellants. The complaint that the charge is upon the weight of the evidence is not well taken. Railway Co. v. Pettis, 69 Tex. 689, 7 S. W. 93; Martin v. Railway Co., 87 Tex. 117, 26 S. W. 1052; Railway Co. v. Ruckman, 49 Tex. Civ. App. 25, 107 S. W. 1158.

[9-12] 2. Under the second assignment it is asserted that paragraph 9 of the charge was erroneous, in that the jury was instructed:

"The burden of proof as to establishing testamentary capacity is upon the proponent of the purported will and codicil. That is, she must establish such capacity by a preponder-. ance of the evidence. A preponderance of the

evidence is the greater weight of credible evidence"

—because the law is that such testamentary capacity must be clearly shown. No authority is cited in support of the proposition that testamentary capacity must be "clearly shown." In my opinion the court committed no error in refusing to so charge. In this connection, however, appellants argue that the charge was in violation of article 3271, which says that—

"Before admitting a will to probate, it must be proved to the satisfaction of the court" that the testator "was of sound mind."

No such objection as· that was urged against the charge in the court below, and cannot be raised in this court for the first time. Chapter 59, Acts 33d Leg., at its regular session, page 113, and in this connection appellants call our attention to the fact that they requested special charge No. 6, wherein they requested the court to instruct the jury:

"That unless the evidence in this case establishes to your satisfaction that J. J. Mundy had testamentary capacity on October 14, 1919, at the time of making the codicil in question, you will answer No to question No. 1, propounded in the court's main charge."

Refusal of this special charge can avail the appellants nothing here, for the reason that its refusal was not complained of in the motion for a new trial, which constitutes the assignments of error in this court. Chapter 136, Acts 33d Leg. (Reg. Sess.) p. 276 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612). Nor is the refusal of the charge assigned as error in this court, and under the settled rule the error, if any, in its refusal, is waived.

[13, 14] 3. Under the third assignment, the seventh paragraph of the main charge defining undue influence is assailed as erroneous because it is upon the weight of the evidence, argumentative, and confusing. In my opinion it is not subject to the objection urged. But if it is, then, I regard it as harmless, for the reason that an examination of the evidence leads me to the conviction that there was no evidence of undue influence, and no issue with respect thereto should have been submitted.

4. The tenth paragraph of the charge reads:

"As to the issue of undue influence, the burden of proof is upon the contestants. That is, they must establish same by the greater weight of credible evidence."

[15-17] It is complained of this paragraph in the fourth assignment that it tends to exclude from the consideration of the jury the evidence introduced by proponent tending to show undue influence. If my view is correct that the issue of undue influence should not have been submitted for want of evidence, then the error, if any, in the charge is harmless. But, in any event, no evidence introduced by the proponent in any wise tended to show undue influence. If there was any evidence of undue influence it was all offered by the contestants. Therefore the charge excluded from the consideration of the jury no evidence upon this issue, and was not objectionable. Furthermore, the error, if any, in this paragraph of the charge was cured by special charge No. 8, requested by contestants and given by the court, which reads:

"You are instructed that undue influence may be proved by circumstantial evidence. If you believe from the evidence, after considering *all the facts and circumstances in evidence before you*, that the codicil of date October 14, 1919, was procured to be executed by undue influence exerted by Harriet Mundy over J. J. Mundy, then you should answer Yes to question No. 2 propounded in the main charge of the court." (Italics mine.)

5. The fifth, sixth, and seventh assignments relate to the question of whether or not the codicil was attested by the subscribing witnesses thereto in the presence of the testator. For the reasons indicated in Justice WALTHALL'S opinion no issue in this respect was raised by the evidence.

[18] 6. The eighth assignment complains of the action of the court in admitting in evidence that part of the testimony of Josephine Wilson taken in the county court and there reduced to writing, wherein she testified that at the time of making the codicil the testator, John J. Mundy, was of disposing mind and memory; the particular evidence objected to being the words "and disposing." For the reasons stated by Justice WALTHALL the certified copy of the record of Mrs. Wilson's testimony taken in the county court was properly admissible under articles 3273–3275, Rev. Stat. And in any event the matter presents no reversible error, because upon the trial Mrs. Wilson testified fully concerning the mental condition of the testator at the time the codicil was executed.

7. As to the ninth assignment, I concur in the view of Justice WALTHALL that the question propounded to Dr. Crouse on cross-examination, by appellants relative to the amount of his charge against the estate of J. J. Mundy, deceased, for operating upon him in his last illness, was wholly irrelevant and immaterial to any issue in the case.

8. Appellants requested charges instructing the jury at length with reference to the law of community and separate property, and that neither the will nor the codicil thereto undertook to dispose of Mrs. Mundy's half of the community estate, and no matter whether the codicil was probated or not she would in law, in any event, and independently of the will or codicil, own and be entitled

to her half of the community estate after the payment of community debts.

Under the tenth, eleventh, twelfth, and thirteenth assignments complaint is made of the failure to give these special charges and of the omission of the court in its general charge to charge upon these matters. I concur in Justice WALTHALL'S view that these charges were foreign to the issues of fact in the case; that they would have been misleading, and would probably have been construed by the jury as conferring upon them the privilege of determining how the testator should have divided his property and whether he had made a fair and proper disposition thereof.

9. I concur in the view of Justice WALTHALL that the fourteenth assignment complaining of the argument to the jury made by one of counsel for proponent presents no error.

10. I concur in the disposition made by Justice WALTHALL of the fifteenth assignment. The matter is unimportant. The county court probated the original will of October 8th, and the contestants are not complaining thereof; so it makes no difference if the district court unnecessarily entered its order again probating the same.

For the reasons indicated, I concur in the affirmance of this case. Chief Justice HARPER also concurs in this additional opinion.