## CAMPBELL et al. v. LAND.
### No. 4177.

Court of Civil Appeals of Texas. Amarillo.
March 12, 1934.

Seay, Malone & Lipscomb, of Dallas, M. F. Billingsley, of Munday, and C. C. Broughton, of Childress, for appellants.

Williams & Bell, of Childress, for appellee.

MARTIN, Justice.

The present controversy arose out of the following facts: Russell T. Land died January 15, 1930, leaving a will in which he appointed his wife, Mary Gladys Land, independent executrix. The probate of this will was contested by J. J. Land, father of deceased, and pending such contest F. O. Campbell, one of the appellants herein, was appointed temporary administrator of the estate of Russell T. Land, deceased, on February 17, 1930, and thereafter executed a bond in the sum of $20,000 with his coappellant herein, United States Fidelity & Guaranty Company, as his surety. On July 3, 1930, by a judgment of the district court of Knox county, Mary Gladys Land was finally appointed independent executrix and thereafter qualified as such. On July 7, 1930, F. O. Campbell filed his final report as temporary ad-

ministrator and asked for his discharge. Such report came on to be heard before the county court of Knox county, and on August 18, 1930, an order was entered in part as follows:

"It is therefore considered, ordered and decreed by the Court that the said report of the said F. O. Campbell, temporary administrator of said estate, be and the same is in all things and respects approved and the sum of $900.00 is hereby allowed the said F. O. Campbell for services as such temporary administrator, which the Court finds to be a reasonable compensation.

"It further appearing to the Court that Mrs. Gladys Land has heretofore qualified as executrix of the last will and testament of Russell T. Land, deceased, and the said Temporary Administrator is hereby ordered and directed to pay and deliver to her all money and property belonging to said estate, and when so paid he shall stand discharged as such temporary administrator."

J. J. Land filed a contest on this report, seeking to prevent the payment of the money then on hand and held by the temporary administrator and the discharge of said temporary administrator. His contest was denied and he appealed to the district court of Knox county. Again losing, he appealed to the Court of Civil Appeals of the Eleventh Supreme Judicial District, where he was again denied any relief. This case is reported in Land v. Land, 40 S.W.(2d) 207, where the facts pertaining to same are fully stated. A writ of error being refused by the Supreme Court, the district court judgment was finally certified for observance to the county court of Knox county on June 16, 1932.

While temporary administrator, there had come into his hands $10,000, collected from a life insurance policy, which was deposited in the First State Bank of Munday by such administrator. This bank closed its doors on October 22, 1931, while the J. J. Land appeal was pending. There was also deposited a sum of money with the First National Bank of Munday which limited withdrawals, but, as this sum was subsequently paid, no further reference will be made to it. The $10,000 deposited in the First State Bank of Munday was never paid, and its nonpayment furnishes the background for the major legal issue involved on this appeal.

Subsequent to July, 1930, and while the J. J. Land appeal was pending, the appellee, Mary Gladys Land, demanded payment of F. O. Campbell, which was refused. Thereupon she instituted suit in the district court of Childress county against F. O. Campbell, temporary administrator, and his surety, United States Fidelity & Guaranty Company, for the payment of the said $10,000 and for a penalty of 5 per cent. per month under article 3543, R. S. 1925. She also joined J. J. Land and his sureties and asked for judgment in the alternative against them by reason of an appeal bond executed and which appeal bond was as follows:

"Estate of R. T. Land Deceased.

"In the County Court Knox County, Texas.

"Whereas in the above entitled and numbered cause pending in the County Court of Knox County, Texas, and on the 18th day of August, 1930, an order and judgment was made and entered by said Court approving the final report of F. O. Campbell as temporary administrator and directing said temporary administrator to turn over and deliver to Mary Gladys Land all of the property and funds of said estate in his hands as is more fully manifest by said order and judgment or record in the minutes or said County Court. From which order and judgment J. J. Land one of the creditors of said estate desires to appeal to the District Court of Knox County, Texas.

"Now, therefore, we, J. J. Land as principal and the other subscribers hereto as sureties acknowledge ourselves bound to pay to Oliver W. Lee, county judge of Knox County, Texas, and his successors in office in the sum of Twenty Thousand Dollars conditioned that the said J. J. Land appellant shall prosecute his said appeal to effect and perform the decision, order, decree or judgment which the District Court shall make thereon in case the cause shall be decided against him the said J. J. Land.

"Witness our hands this 19th day of August, 1930.

"J. J. Land,
"Fred N. Warren,
"J. W. Ryan.
"Approved this 26th day of August, 1930.
"Thomas F. Glover,
"Clerk County Court, Knox County, Texas."

To this suit appellants answered by various special exceptions and pleas, many of which are not necessary to mention. They plead in substance and effect the facts hereinbefore set out. They specially pleaded that there had never been a final order of the probate court authorizing and empowering the temporary administrator to deliver the money sued for, this by reason of the appeal of J. J. Land already adverted to. They further pleaded in substance and effect that, when

the money in the hands of the administrator was deposited in the banks already mentioned, each and both were solvent and had the general reputation of being solvent and that the administrator used reasonable care in the selection of a depository. They each further, by way of cross-action against J. J. Land and his sureties, alleged that, at the time the probate court of Knox county approved the final report of such administrator and ordered the payment of all funds on hand to the appellee, the First State Bank of Munday was solvent and payment could then have been made, and that the appeal of J. J. Land prevented said payment, by reason of which said money in said bank was finally lost, and asked that the said Land and his sureties be made parties to the suit and that they have judgment over against them for the amount of any judgment that might be rendered for appellee against them upon the administrator's bond.

Land and his sureties answered and upon exception were dismissed from the suit. The nature of their pleadings will more fully appear hereinafter. Upon final hearing the court entered judgment against Campbell and his surety, appellants herein, for the sum of $20,000. Approximately $10,000 of this shows to have been the amount on deposit in the First State Bank of Munday, and the remainder of such judgment was penalty and interest.

■■ Error is properly assigned to the action of the trial court in dismissing J. J. Land and his sureties from this suit. We sustain this assignment. They became bound by the stipulations of their bond to perform the order and judgment of the district court of Knox county. This decree was in substance and effect for the payment of the funds in the hands of the temporary administrator to appellee, Mary Gladys Land. The bond of J. J. Land is set out above. Appellee could sue upon said bond or upon that of Campbell, or both. She did, in fact, sue upon both; her prayer for judgment against Land and his sureties being in the alternative. On the other hand, Campbell and his surety upon proof of the issue tendered in their respective pleadings and payment of the amount due under said bond was subrogated to any and all rights the executrix, Mary Gladys Land, ever had or held in the aforesaid Land appeal bond, and were therefore entitled to judgment over against Land and his sureties for any amount they or either were compelled to pay. This is, we think, clearly settled. We quote:

"The guarantor had the right to pay the amount of the judgment recovered against his principal, and thus put an end to this liability at once. By the voluntary intervention of the appellant in becoming surety on the appeal bond, all further proceedings on the judgment which the landlord was awarded the right of immediate possession were stayed, and the hands of the guarantor were effectually tied until the appeal was disposed of. * * * Having intervened as a volunteer, and by his interposition stayed proceedings on the judgment for possession to the prejudice of the guarantor, whose liability had become fixed and at an end so far as respects future rents, it must be considered in equity that he did so upon the condition that he would take the place of the guarantor from that time forward." 60 C. J. 768, note (a).

■ "As between successive sets of sureties on different bonds given in judicial proceedings, those last in time are primarily liable, and those first in time become supplemental sureties for them. The sureties among themselves are liable in the inverse order of their undertakings, and accordingly the sureties on prior bonds may seek reimbursement from those on later bonds when compelled to pay the indebtedness. * * *" 50 C. J. 315.

"Where the interposition of the second surety is the means of involving the first in the liability which he was ultimately compelled to pay, the equity of the first is complete, and he is entitled, on the principles of subrogation, to stand as though the creditor had assigned the bond to him. So where a second bond operated to stay an execution levied against real estate, this is detrimental to the first surety, and therefore entitled him to subrogation upon the payment of the judgment to the rights of the creditor in the stay bond. But for the interposition of the second surety the judgment might have been enforced against the real estate." 25 R. C. L. 1331, § 14.

"In regard to this question of superiority of equities, which is liable to arise in the case of prior and subsequent bonds, executed by different sureties, for distinct purposes, and both constituting securities in the hands of the creditor for the same debt, it is well settled that, if the interposition of the second surety is for the benefit of the principal alone, without the sanction or assent of the first surety, who may be prejudiced thereby, as when the effect of the second bond is to prevent the enforcement of present payments from the principal, and thus to prolong the responsibility of the first surety, in such a

case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second." 77 A. L. R. 459; Hartwell v. Smith, 15 Ohio St. 200.

Judge Wheeler, for the Supreme Court in the case of Mitchell v. De Witt, 25 Tex. Supp. 180, 185, 78 Am. Dec. 561, uses the following language: "Where, however, such means consist of the responsibility of an individual becoming a later surety or guaranty for the same debt of the principal, there arises a conflict of equities, which may give rise to new questions as to the priority between the former and latter surety; such latter surety stipulating, at the instance of the principal, to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and has no right to complain that he is not allowed to use, as a payment by himself, the money which proceeds from another person, whom his principal was previously bound to save harmless. How the equity would be in a naked case of this kind, I give no opinion; it is sufficient that it is settled, that if the interposition of the second surety may have been the means of involving the first in the ultimate liability to pay, the equity of the first surety decidedly preponderates."

See, also, Brandenburg v. Flynn's Adm'r, 12 B. Mon. (Ky.) 397; Hinckley v. Kreitz, 58 N. Y. 583; Hawkins v. Western Nat. Bank of Hereford (Tex. Civ. App.) 145 S. W. 722.

The reason given in the pleading filed by J. J. Land and his sureties for their dismissal was that the cause of action against Campbell and his surety was ex contractu, while that alleged against themselves was ex delicto. This is a mistaken view. Both arose out of a contract relating to precisely the same debt. The evidence is essentially the same in both cases. But one debt is involved, and all equities between the parties can be adjusted in one suit, and we are of the opinion that the trial court erroneously declined to assume jurisdiction over the cause of action alleged by both the executrix and appellants against Land and his sureties. This conclusion is supported by many authorities. The case of Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423, by our Supreme Court, in its facts and reasoning, is, we think, in point. Other authorities are Love v. Keowne, 58 Tex. 191; 1 Tex. Jur. pp. 639, 640, 641, and 654; Barton v. Farmers' State Bank (Tex. Com. App.) 276 S. W. 177, 180, 181, and numerous authorities there correlated; National Surety Co. v. Atascosa Ice, Water & Light Co. (Tex. Com. App.) 273 S. W. 821; Har-

less v. Haile (Tex. Civ. App.) 174 S. W. 1020; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Notes to case of Ader v. Blau, 41 A. L. R. p. 1231.

There is one peculiar phase of this case that makes the joinder of Land and his sureties particularly necessary in order for complete redress to be given the executrix without a multiplicity of suits. As we shall presently attempt to show, the executrix could not recover interest from the appellants during the time payment to her was held up by Land's appeal. Being deprived of the use of her money, she ought to recover interest. We see no reason to doubt that she might, therefore, recover judgment against appellants for the principal and against Land and his sureties for her interest, and in this same judgment appellants might secure protection for themselves on any sums paid out and which loss to them was occasioned by the said appeal of Land.

We are further of the opinion that neither interest nor penalties are recoverable against appellants during the pendency of the Land appeal. The right to the recovery of a penalty, if any exists, is based upon article 3543, reading as follows: "Where an order is made by the county judge, for an executor or administrator to pay over money to any person other than the State Treasurer, and such executor or administrator shall neglect to make such payment when it is demanded by the person entitled thereto, his agent or attorney, such executor or administrator shall be liable on his official bond to the person in whose favor such order of payment was made, for damages upon the amount he shall so neglect to pay, at the rate of five per cent per month for each month he shall so neglect to make such payment after the same was so demanded, such damages to be recovered by suit against such executor or administrator and the sureties upon his bond before any court having jurisdiction of the amount claimed, exclusive of interest and such damages."

By the terms of this statute, an administrator is liable only and if he neglects to pay upon demand to the party entitled thereto. The executrix here was not entitled to money in the hands of the temporary administrator until a final judgment was rendered ordering him to pay same over, and such administrator did not neglect to pay when the court's order to pay had been suspended by Land's appeal. How could he neglect to perform a duty whose performance had, in effect, been suspended? He would have no protection in such case if he made a mistake, and we think

common prudence demanded the very action he took in this case pending Land's appeal from the final decree which ordered him to pay. This decree was suspended pending Land's appeal from it. Wiren v. Nesbitt, 85 Tex. 286, 20 S. W. 128; Cavanaugh v. Cavanaugh (Tex. Civ. App.) 249 S. W. 264; Earl v. Mundy (Tex. Civ. App.) 227 S. W. 716. The trial court erred in awarding any recovery against appellants for penalty and interest during the pendency of said appeal of J. J. Land; it appearing that Land's action was in no wise controllable by appellants.

There are some other questions raised which we think either pass out of the case in view of the above or will likely not again occur. We decline to discuss the sufficiency of the evidence in view of another trial.

The judgment is reversed, and cause remanded.